### Pittsburgh Plate Glass Company v. Cassidy.

(Decided March 3, 1922.)

#### Appeal from Fayette Circuit Court.

1. Guaranty—Notice of Acceptance.—Where a guaranty is contemporaneous with the principal obligation or the whole of the trans-

action is connected or of such nature as to give the guarantor notice of the acceptance of the guaranty, formal notice is unnecessary.

2. Guaranty—Notice of Acceptance.—The shipment of a bill of merchandise, at the request of one guaranteeing payment in a specific sum, is a direct obligation created contemporaneously with the indebtedness, in which case formal notice of the acceptance of the guaranty is unnecessary.

3. Guaranty—How Determined—Whether Limited or Continuing.—Guaranties, whether limited or continuing, are to be determined in the light of the declared or inferred purpose and intent of the parties as ascertained from the writing itself.

4. Guaranty—Limited Guaranty.—A guaranty of the payment of a specific sum in order to induce the shipment of a bill of merchandise held to be limited and to cover indebtedness thereafter incurred but not to include pre-existing indebtedness.

FALCONER & FALCONER for appellants.

T. T. FORMAN and FORMAN & FORMAN for appellee

Opinion of the Court by Judge Moorman—Reversing on original appeal and affirming on cross appeal.

Appellant, Pittsburg Glass Company, sued appellee, T. D. Cassidy, for $1,000.00 on a guaranty of credit extended to J. R. Tilton & Company. The chancellor upheld the guaranty but applied certain credits to it which reduced it to $416.27. The glass company appealed and Cassidy has asked and been allowed a cross appeal.

J. R. Tilton & Company was engaged in the retailing of glass, paint and painters' supplies in Lexington, Kentucky, in 1916. This firm and its predecessor, J. R. Tilton, had theretofore patronized appellant in a small way. J. R. Tilton, prior to January 30, 1915, placed an order with appellant for a larger shipment of merchandise than usual and appellant, declining to make shipment without a guaranty of payment, wrote Tilton on January 20, 1915, requesting that he furnish a guaranty; whereupon appellee Cassidy, by a written memorandum at the bottom of the letter, requested appellant to extend to Tilton credit to the amount of $700.00 and guaranteed the payment of indebtedness incurred pursuant to the request. Thereafter and before January 7, 1916, appellant sold to J. R. Tilton and J. R. Tilton & Company, merchandise of the value of $1,165.37. On January 7, 1916, appellant returned Cassidy's guaranty for $700.00, advising that it was then void because goods amounting to approximately

$700.00 had been shipped and paid for. But appellant informed Tilton that the notes, which it then held against him, and the orders just received would run close to $900.00 and requested that he send another guaranty, and have it so read that it would not be void  so  soon  as $1,000.00 worth of goods had been bought and paid for. On January 10, 1916, appellee telegraphed appellant as follows: "Extend credit $1,000.00 J. R. Tilton & Company. Ship glass quick. Confirm by letter." And then on the following day confirmed the guaranty by a letter which read: "Confirming my telegram of the 10th I hereby authorize you to extend a line of credit not exceeding $1,000.00 to J. R. Tilton & Company of this city. This is in reply to your letter of January 7th."

The telegram and letter just quoted constitute the guaranty sued on. On the cross appeal it is insisted that there was no acceptance of this guaranty and for that reason appellee was not bound by it. Since the cross appeal goes to the merits of the entire controversy it will be disposed of first.

In support of his contention appellee relies on Kincheloe v. Holmes, etc., 7 B. Monroe 5; Steadman v. Guthrie, et al., 4 Metcalfe 147; Bell & Terry v. Kellar, 13 B. Monroe 381. In the last mentioned case it was attempted to extend the obligation of a general letter of credit to the endorsement of a bill of exchange, and it was held that appellants were not entitled to recover on the guaranty, since they neither alleged nor proved an acceptance of it until nearly two years after the bill had been given, nor alleged or proved any notice of acceptance until the death of the drawee of the bill; furthermore that the guaranty did not contemplate the endorsement of a bill for the accommodation of the drawee.

Kinchloe v. Holmes, etc., *supra,* was in the nature of a general letter of credit and it was considered that an acceptance was necessary in order to bind the guarantor, in as much as the selling of goods in a distant city to a person having a letter of guaranty, which might or might not be shown or relied on, is not of itself sufficient to constitute an acceptance or bind the guarantor.

Steadman v. Guthrie, referred to, does not extend the rule further than it was applied in the two cases just mentioned. It is generally held, where notice of acceptance is deemed necessary, that the notice is required in order that the guarantor may know the extent of his liability and

thus be in position to protect himself from unnecessary loss; but where the guaranty is contemporaneous with the principal obligation or the whole of the transaction is connected, or of such a nature as to give the guarantor notice of acceptance, formal notice is unnecessary. (12 R. C. L. 1070.)

This was held in Thompson v. Glover, 78 Ky. 193, where there was a specific guaranty against loss on a shipment of 23 hogsheads of tobacco. The same rule was applied in Baker, etc. v. Farmers Tobacco Warehouse Company, 90 Ky. 419; White Sewing Machine Co. v. Powell, etc., 25 Ky. L. R. 94; J. R. Watkins Medical Co. v. Brand, et al., 143 Ky. 468, and McGowan v. Wells, Trustee, 184 Ky. 772.

The evidence in the case at bar shows that appellee had previously guaranteed a credit of $700.00 and that his guaranty of $1,000.00 was made at the instance of Tilton & Company, with appellant's letter of January 7th before him. It further shows that he had a contract with J. R. Tilton by which he was to receive one-third of the net profits of the retail business, though he said he never expected to enforce that agreement. Moreover, in his telegram of guaranty he requested the shipment of an order theretofore received, agreeing to guarantee the payment of a specific sum. In these circumstances his guaranty must be treated as a direct obligation coming within the rule announced in the line of cases last mentioned. But even if it could not be considered a direct obligation, it was contemporaneous with the creation of the obligation of Tilton & Company and appellee's rela-. tion with that company was such as to put him on notice of the acceptance of the offer, without formal notice from appellant. In this view of the effect of the transaction it must be held that formal notice of acceptance was not necessary.

On the original appeal it is contended that the guaranty was a continuing one and the liability of appellee thereunder is $1,000.00, regardless of payments made on credits extended after the guaranty was made; and also that such payments should have been applied to the unsecured part of the indebtedness incurred subsequently to the guaranty.

In urging the first contention appellant relies on Wild & Co. v. Haycraft, 2 Duvall 309; Lowe v. Beckwith, 13 B. Monroe 150, and numerous other decisions from other jurisdictions. We deem it unnecessary to discuss all of

these authorities. It is sufficient to say that an examination of the guaranties therein construed will show that the phraseology used evidenced the purpose of a continuing obligation. In the Haycraft case, *supra,* the obligors bound themselves in a specified sum for any goods that the purchaser might buy "to be paid for at such times as may be agreed upon by said Wilder & Company" and the purchaser. And in the Beckwith case the language of the guaranty clearly indicated that it was intended and understood by the parties not to be a limited guaranty, for it appeared that the obligation was to enable the purchaser to "commence business," he being about to embark in business and desiring a line of credit with Lowe & Company. So in all cases relied on by appellant, there is to be found language in the guaranty in which there is an express or implied purpose to make it continuing. Every writing of this kind is to be interpreted in the light of the declared or inferred purpose and intent of the parties as ascertained from the writing itself. The guaranty involved in this litigation is clearly limited and not continuing.

Between January 11th and June 20, 1916, about which latter date J. R. Tilton & Company failed, appellant sold to Tilton & Company more than $1,400.00 worth of goods. The chancellor credited the guaranty with certain notes aggregating $369.91, which were executed and delivered to appellant by J. R. Tilton on December 28, 1915, for merchandise previously sold. These notes matured after January 10, 1916, and were paid by J. R. Tilton & Company at maturity. These credits were not properly chargeable against the guaranty of January 10th, since it only covered indebtedness thereafter incurred and was not applicable to the promissory notes of December 28th.

Appellee contends that the letter of January 7th should be read in connection with the guaranty sued on and that portion reciting that "with the notes that we now have and the orders just received, we find, that your account will run close to $900.00, which is our reason for asking you to increase the amount of the next guaranty," manifested an intention on the part of appellant to treat the guaranty as including the previously executed notes. It is conceivable that if it advanced appellant's interest to make the guaranty apply to those notes it would endeavor so to construe it, but such a purpose could not in that event define or change the effect of the guaranty.

It was certainly the purpose of appellant, as exhibited in the same letter, to have the guaranty a continuing one, but that purpose is unavailing as affecting its construction. Considering the telegram and letter alone, the logical construction is that the guaranty covers credits extended after January 10, 1916. The notes represented credits previously extended and the telegram requested that appellee "extend credit," and the confirmatory letter authorized it "to extend a line of credit not exceeding $1,000.00."

It is true that the letter of confirmation referred to appellant's letter of January 7th in which the language relied on is to be found, but appellant's letter cannot be read in connection with appellee's letter, with the view of fixing the application of the guaranty, any more than it can be considered in that connection for the purpose of determining whether the guaranty was limited or continuing. As we construe the guaranty it was an obligation to the extent of $1,000.00, for indebtedness thereafter incurred, and, accordingly, it was error to credit the claim by payments made on prior indebtedness or on the notes executed December 28, 1910.

Payments made after January 10, 1916, on indebtedness incurred subsequently to that date, should be credited on the guaranty, since neither the creditor nor debtor designated whether they should apply to the secured or unsecured account. (Cyc. vol. 32, 172; McDaniel v. Barnes, 5 Bush 183.) Whatever was received by appellant from the bankrupt estate of Tilton & Company on the claim filed by appellee is properly a credit on the liability to appellant under the guaranty.

Wherefore, the judgment is reversed on the original appeal and affirmed on the cross appeal.