**INTERCARGO INSURANCE COMPANY, Appellant,**

v.

**B.W. FARRELL, INC.; L.B. Hammet; Lois N. Hammet; Patrick D. Hammet; Shara Sights Hammet; and The Hammet Company, Inc., Appellees.**

No. 2000–CA–002821–MR.

Court of Appeals of Kentucky.

Oct. 25, 2002.

**424**

Deborah B. Simon, Paducah, KY, for Appellant.

David C. Booth, Paducah, KY, for Appellee.

Before COMBS, GUDGEL, and HUDDLESTON, Judges.

## OPINION

COMBS, Judge.

Intercargo Insurance Company (Intercargo) appeals the judgment of the McCracken Circuit Court dismissing its complaint with respect to all of the appellees for failure to state a claim. As to appellees B.W. Farrell, Inc., Patrick Hammet, and Shara Hammet, it dismissed for the additional reason of lack of personal jurisdiction. After a review of the record and the applicable authorities, we vacate and remand for additional proceedings on the merits of Intercargo's complaint seeking to enforce an indemnity agreement.

The appellee, B.W. Farrell, Inc. (Farrell), is a corporation formed under the laws of the State of Louisiana. It performs construction projects primarily for the United States Corps of Engineers in Louisiana and elsewhere in the South—but not in Kentucky. Farrell is a wholly owned subsidiary of The Hammet Company, Inc. (Hammet Company), a Florida corporation which is authorized to do business in Kentucky and which has an office in Paducah, Kentucky. The Hammet Company is owned by the appellee, L.B. Hammet, who with his wife, the appellee, Lois Hammet, resides in Kentucky.[1]

Intercargo Insurance Company acted as surety issuing performance bonds for B.W. Farrell, Inc., and The Hammet Company. On July 19, 1996, a General Agreement of Indemnity was executed on behalf of Intercargo by: B.W. Farrell, Inc.; the Hammet Company, Inc.; L.B. Hammet; and Lois N. Hammet. A second, supplemental General Agreement of Indemnity was executed on July 1, 1997, and was signed by: L.B. Hammet, individually and in his capacity as president of both the Hammet Company and Farrell; his son, Patrick Hammet, individually and in his capacity as vice-president and/or secretary of both corporate entities; Lois Hammet, wife of L.B. Hammet; and Shara Hammet, wife of Patrick Hammet. That second indemnity agreement promised to hold Intercargo harmless from claims arising from surety bonds on which either the Hammet Company, Inc., or B.W. Farrell, Inc., was a principal, providing specifically as follows:

> [to] indemnify and hold [Intercargo] harmless from and against any and all demands, liabilities, losses, costs, damages, attorneys' fees and expenses of whatever kind or nature which arise by reason of, or in consequence of, the execution by [Intercargo] of any bond on behalf of [Farrell][.]

The second indemnity agreement was signed after Farrell sought a performance bond from Intercargo in June of 1997 to

---

1. After this appeal was filed by Intercargo, L.B. Hammet and Lois Hammet filed for protection from their creditors, including Intercargo, in U.S. Bankruptcy Court in Louisiana. We have not yet been provided with the orders of the court discharging their debts, but counsel has informed the court that they were discharged on June 6, 2002.

secure its work on a contract awarded by the United States Corps of Engineers to perform construction on a project in Louisiana. In 1998, in connection with that project, Intercargo paid a claim against Farrell's performance bond in the sum of $30,000 to a Louisiana subcontractor, Dolese Brothers Company. The appellees refused to reimburse the claim, and Intercargo filed suit to enforce the indemnity agreement.

The appellees moved to dismiss the complaint pursuant to CR[2] 12.02. They argued that the indemnity agreements failed to comply with KRS[3] 371.065; that they were unenforceable as a matter of law; and that Farrell, a foreign corporation, and Patrick and Shara Hammet, residents of Indiana, did not have sufficient contacts with Kentucky to allow the court to exercise personal jurisdiction over them.

On September 27, 2000, the McCracken Circuit Court entered an order dismissing the complaint with prejudice for failure to state a claim upon which relief could be granted. With respect to Farrell, Patrick Hammet and Shara Hammet, it dismissed for lack of personal jurisdiction. Intercargo's timely motion pursuant to CR 59.05 to set aside or amend the order of dismissal was denied on November 3, 2000. This appeal followed.

█ Intercargo argues that KRS 371.065 does not apply to its indemnity agreement with the appellees. That statute provides in relevant part as follows:

> (1) No guaranty of an indebtedness which either is not written on, or does not expressly refer to, the instrument or instruments being guaranteed shall be valid or enforceable unless it is in writing signed by the guarantor and contains provisions specifying the amount of the maximum aggregate liability of the

guarantor thereunder, and the date on which the guaranty terminates.

If this statute governs, the agreement must fail as it contains no limit on the appellees' maximum liability nor an ending date for their exposure to liability.

Intercargo counters by contending that the performance bond which it executed on behalf of Farrell is not an "instrument" as contemplated by the statute. Intercargo also argues that an indemnity agreement is wholly distinct from a guaranty agreement and that it was not the intention of the Legislature to include indemnity agreements within the scope of KRS 371.065.

In granting the appellees' motion to dismiss for failure to state a claim, the trial court made no independent analysis of the statute and instead accepted the appellees' argument that the statute applied to all types of guaranty agreements. The appellees argue that the term *guaranty* as used in KRS 371.065—if given its common meaning—encompasses the very type of indemnity agreement that Intercargo attempts to enforce:

> Here, we have a statute which sets out requirements for a valid, enforceable guaranty which include a statement of the amount of the maximum liability and a termination date. Giving the words of the statute their literal meaning in the present case is neither absurd nor unreasonable. To the contrary, to interpret the statute as the lower court has done carries out the intent of the legislature by protecting third party guarantors, indemnitors, sureties from overreaching contracts. (Appellee's brief, pp. 8–9.)

The appellees essentially contend that *guaranty* and *indemnity* are synonymous and interchangeable.

---

2.  Kentucky Rules of Civil Procedure.

3.  Kentucky Revised Statutes.

Intercargo correctly points out that the statute is unique to Kentucky. As originally enacted in 1986, the statute applied only to guaranties of commercial paper. *APL, Inc. v. Ohio Valley Aluminum, Inc.,* Ky.App., 839 S.W.2d 571 (1992). In 1990, the General Assembly amended the title of the act to "AN ACT relating to guaranties." This Court previously reasoned that that amendment of its title evinced an intent to give the statute a "broader applicability." *Id.* at 575.

■ We agree that the legislature intended to expand the statute to apply to more than just those guaranties of instruments which qualify as commercial paper. However, we agree with Intercargo that the legislature did not intend to include within its scope the type of indemnity agreements at issue in this case. A contract of indemnity is an obligation or duty requiring a promisor (here, the appellees) to make good any loss or damage which another has incurred while acting at the request or for the benefit of the promisor. *See* 41 Am.Jur.2d *Indemnity* § 1 (1995). Performance bonds in the construction industry are a prime example where a surety posts a bond on behalf of a principal to guarantee performance by a subcontractor, and the principal agrees to indemnify its surety for any loss arising as a result of non-performance. A guaranty agreement is one in which the promisor protects his promisee from liability for a debt resulting from the failure of a third party to honor an obligation to that promisee—thus creating a secondary liability. In contrast, an indemnity contract creates a direct, *primary* liability between the promisor and promisee that is original and independent of any other obligation. *See* 38 Am.Jur.2d *Guaranty* § 14 (1999).

The essential distinction between an indemnity contract and a contract of guaranty is that the promisor in any indemnity contract undertakes to protect his promise (sic) against loss or damage through a liability on the part of the latter to a third person, while the undertaking of a guarantor or surety is to protect the promisee against loss or damage through the failure of a third person to carry out his obligations to the promisee.

■ We agree with Intercargo that this distinction is critical to the issue of the whether the Legislature intended to include indemnity agreements within the ambit of KRS 371.065. As we read the statute, we believe that the Legislature intended to protect those individuals (guarantors) who promise to be liable when a third party defaults on an underlying obligation to its guarantee (promisee). However, we find no such legislative intent to protect those (indemnitors, appellees) who have promised to hold harmless and provide reimbursement to an entity (Intercargo) who stood in the shoes of the indemnitor(s) and made payment on an obligation incurred by and owed by the indemnitor(s) to a third party (Dolese Brothers Company).

■ We are further convinced that the term *instrument* as used in KRS 371.065(1) was intended to apply to instruments extending credit rather than to performance bonds. A guaranty is in the nature of commercial paper or of a negotiable instrument while an indemnity agreement is more akin to an insurance contract. Under the terms of the performance bond, Intercargo was obligated to assume Farrell's duties under the construction contract in the event of Farrell's default. The bond secures performance rather than a specific amount of money. Damages are unliquidated and uncertain as they are in case of a breach of contract. The statute's requirement that a maximum monetary amount be stated in the guaran-

ty agreement is more in keeping with the requirement that a negotiable instrument state on its face "a fixed amount." KRS 355.3–104(1).

■ The legislature crafted the statute in order to protect persons or entities who guarantee the extension of credit to third parties in those situations where the instrument of credit (the guaranty) may not be a negotiable instrument *per se* but shares features in common with commercial paper. However, the appellees argue that the legislature also intended to protect sophisticated businessmen and corporate executives from their own promises when they pledge their individual assets to secure performance bonds for their corporate ventures—essentially granting them *carte blanche* to renege on their contractual obligations. We do not agree that the legislative intent was to supplant the power, rights, or obligations of parties to a contract. We hold that the trial court erred in dismissing the complaint for failure to state a claim.

■ We also find error in the court's determination that it lacked personal jurisdiction over Farrell, Patrick Hammet, and Shara Hammet. Farrell is incorporated under the laws of the State of Louisiana. However, Farrell is the wholly owned subsidiary of the Hammet Company, which has an office in Paducah, Kentucky, and which is authorized to do business in Kentucky. While that fact alone would not provide an adequate basis to bring Farrell within the jurisdiction of Kentucky courts, the record reveals sufficient contacts by Farrell to Kentucky to bring it under our long-arm provisions. *See* KRS 454.210. Indeed, with the exception of Shara Hammet, the indemnity agreement which Intercargo is attempting to enforce was executed by all the appellees, including the corporate officers, individually and on behalf of the corporation, including Patrick Hammet, in McCracken County, Ken-

tucky. Ironically, the appellees relied on the fact that the contract had been formed and executed in Kentucky in order to argue for the application of Kentucky law in their attempt to *escape* the enforcement of the contractual provisions. *See Breeding v. Massachusetts Indemnity and Life Insurance Co.*, Ky., 633 S.W.2d 717 (1982).

In addition to the fact that the agreement was signed by the officers of the corporation in Kentucky, the record reveals that the Board of Directors of the corporation met in Kentucky when it issued the resolution to authorize the execution of the indemnity agreement by the corporation. The corporation held itself out to Intercargo as amenable to suit in Kentucky by using a corporate letterhead listing its only address as "Paducah, Kentucky." We believe that the execution of the contract in Kentucky and the enactment of the corporate resolution authorizing the agreement with Intercargo constitute sufficient minimum contacts of the corporation and of Patrick Hammet with Kentucky "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), *quoting Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 342–343, 85 L.Ed. 278 (1940); *see also, Friction Materials Co. v. Stinson*, Ky.App., 833 S.W.2d 388, 390 (1992).

■ Finally, the record reveals that Shara Hammet executed the agreement in a foreign state, Louisiana. Nevertheless, we agree with Intercargo that Shara Hammet should have been on notice that she could be subject to litigation in Kentucky. In *National Can Corporation v. K Beverage Company*, 674 F.2d 1134 (1982), the court found that jurisdiction was proper in the forum state (Kentucky) in nearly identical circumstances involving the wife of a corporate officer who had signed a guaran-

ty in another state. The court held that the wife's economic interest in the corporation furnished the minimum contacts needed to satisfy constitutional due process concerns. *See also, Perry v. Central Bank & Trust Co.*, Ky.App., 812 S.W.2d 166 (1991).

For the foregoing reasons, the judgment of the McCracken Circuit Court is vacated, and this matter is remanded for further proceedings consistent with this Opinion.

ALL CONCUR.