**Diane DOE, etc. et al.,
Plaintiffs–Appellants,**

v.

**Omer RENFROW, etc. et al.,
Defendants–Appellees.**

No. 79–2116.

United States Court of Appeals,
Seventh Circuit.

Nov. 3, 1980.

Joseph Morris, Chicago, Ill., for plaintiffs–appellants.

Rhett Tauber, Merrillville, Ind., for defendants–appellees.

Before CUMMINGS, SPRECHER and BAUER, Circuit Judges.

ORDER

On consideration of the petition for rehearing and suggestion for rehearing *en banc* of 631 F.2d 91, filed in the above–entitled cause by plaintiff–appellant Diane Doe, a vote of the active members of the Court was requested, and a majority of the active members of the Court did not vote to grant a rehearing *en banc.** All of the judges on the original panel have voted to deny the petition for rehearing. Accordingly,

IT IS ORDERED that the aforesaid petition for rehearing be, and the same is hereby, DENIED.

SWYGERT, Circuit Judge, dissenting from the order denying the petition for rehearing.

I am deeply troubled by this court's holding in 631 F.2d 91 that the dragnet inspection of the entire student body of the Highland Senior and Junior High Schools by trained police dogs and their dog–handlers did not constitute a search under the Fourth Amendment. No doctrine of *in loco parentis* or diminished constitutional rights for children in a public school setting excuses this alarming invasion by police and school authorities of the constitutional rights of thousands of innocent children. Any attempt by the district court or this court to portray the events of March 23, 1979 as only a deviation in degree from the normal school day is grossly misplaced. In my view, those events were a deviation in kind and constituted a danger not only to the psychological well-being of the children but to the fundamental concepts of our Bill of Rights.

Although a number of incidents involving alcohol, drugs, and related paraphernalia had been reported to school authorities, no more than twenty ·one out of 2,780 students had been involved. School authorities had to concede that, in general, conditions at the Highland schools were at least average and could well have been better than at most other schools. At the time of the raid, they possessed no specific information as to particular drugs or contraband, transactions or events, or drug suppliers or abusers. Nevertheless, over a period of weeks a scheme was developed and executed that implicated all 2,780 students and subjected all to a humiliating search by police dogs.

The raids began at 8:45 A.M. on March 23, 1979. The searchers were divided into teams consisting of at least one dog, one dog handler, one school administrator or teacher, and one or two uniformed police officers. Fourteen dogs were on hand. For the duration of the raid, all schoolhouse doors were either locked or tightly guarded

by police and school officials. All students were detained in their first period classrooms; any late arrivers or visitors were led to and detained in a room set aside for that purpose. No student was allowed to leave his or her classroom, and if any claimed to need to use the lavatory facilities, school or police authorities escorted and watched over them.

Every student was instructed to place his belongings in view and his hands on his desk. Girls placed their purses on the floor between their feet. The teams of searchers moved from room to room, and from desk to desk. Every single student was sniffed, inspected, and examined at least once by a dog and a joint school–police team. The extraordinary atmosphere at the school was supplemented still further when representatives of the press and other news media, invited in by school authorities, entered the schoolhouses and classrooms during the raid and observed the searches while in progress.

The raid lasted about three hours. After the sniffing and examination of 2,780 students, the searchers found fifteen high school students–and no junior high students–in possession of illicit materials. School and police authorities removed five high school students–three girls and two boys–from their classrooms and subjected them to personal interrogations and thorough, but not nude, searches. None was found to be in possession of any contraband. Three or four junior high students were similarly treated and cleared. Four junior high students–all girls–were removed from their classes, stripped nude, and interrogated. Not one of them was found to possess any illicit material.

The district judge held in an opinion adopted by a panel of this court that "the presence of the dog and its trainer within the classroom, also at the request and supervision of the school officials, was only an aide to that official's observation of students.... [T]he sniffing of a trained narcotic detecting canine is not a search." I strongly disagree. In my view, the circumstances of March 23 can hardly be likened to the observations of a school administrator, sniffing the air about him as he goes about his business. Here there was evidence that the trained dogs ran their noses along pupils' legs, actually touching the bodies of the students.

The cases cited by the district court as holding that sniffing dogs do not constitute a search are totally inapposite because in those cases the dogs were sniffing inanimate and unattended objects rather than people. Here the intrusive probings by the dogs were in no sense mere observation of " 'physical characteristics ... constantly exposed to the public,' ... [but] constituted the type of 'severe, though brief, intrusion upon cherished personal security' that is subject to constitutional scrutiny." *Cupp v. Murphy*, 412 U.S. 291, 295, 93 S.Ct. 2000, 2003, 36 L.Ed.2d 900 (1973) (citations omitted). *See also United States v. Kenaan*, 496 F.2d 181 (1st Cir. 1974). We need not speculate afar about the psychological trauma suffered by the students during this mass search. The accusing finger of the police may well remain for a lifetime upon these young, impressionable minds.

Had a warrant properly been sought, I am convinced that none could have issued consistent with the Fourth Amendment. The police and school officials neither possessed nor attempted to gain specific information about any particular student. There was also no information as to any particular drug or contraband transaction or event. Thus, all 2,780 students were under suspicion, and there was no known crime.

A search under these conditions is unconstitutional under either a reasonable suspicion or a probable cause standard. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Davis v. Mississippi*, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969); *Ybarra v. Illinois*, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979). I cannot consider this a "school" case because the mass search was planned and executed with extensive police involvement rather than solely by school personnel. But even considered in the context of "school" cases, there was no

reasonable suspicion here to justify the mass search. *See M. M. v. Anker,* 477 F.Supp. 837 (E.D.N.Y.), *aff'd,* 607 F.2d 588 (2d Cir. 1979). Nor was the constitutional violation abrogated by the fact that the police did not plan any arrests. The Fourth Amendment protects against unreasonable searches because of "the right of the people to be secure in their persons" whether or not an arrest would necessarily follow.

Violations of a person's "cherished personal security" * whether engaged in by violent antisocial elements of our society or by overzealous, insensitive police must be condemned. Both should be dealt with in accordance with legal consequences that foster deterrence.

FAIRCHILD, Chief Judge, dissenting.

I voted for rehearing *en banc* and surely join in Judge Swygert's concern whether the dogs were used in a manner which itself without further individual intervention invaded protected privacy rights. I further question whether the record demonstrates that the responses of the dogs were sufficiently reliable indicators of the presence of contraband to constitute probable cause justifying the individual searches. After all, it appears that although the canine response raised suspicion toward 50 students, only 15 were found to possess contraband. As to plaintiff Doe, I gather that she probably caused the dog to respond to her because she had been playing that morning with her own dog which was in heat. I was not, however, a member of the panel, did not read the briefs on appeal, nor hear oral argument with opportunity to question counsel, nor examine the record. I therefore go no further toward expressing at this stage an opinion on the merits of the appeal.

* *Cupp v. Murphy,* 412 U.S. 291, 295, 93 S.Ct. 2000, 2003, 36 L.Ed.2d 900 (1973).

* After preliminary examination of the briefs, the court notified the parties that it tentatively had decided that oral argument was unnecessary. The notice provided that any party could file a

HARLINGTON WOOD, Jr., Circuit Judge, dissenting. As I believe this case raises significant issues with an impact beyond these particular parties, I respectfully dissent. I join generally in the concerns expressed by my other dissenting colleagues. However, without the benefit of an *en banc* hearing, I am reluctant to express an opinion on the merits of those issues.

CUDAHY, Circuit Judge, dissenting. Although I do not feel in a position to express specific views on the merits, I share in the concerns so eloquently expressed by my colleagues.