No. 80–1306.   DOE, BY DOE ET UX., HER PARENTS AND NEXT FRIENDS *v.* RENFROW, SUPERINTENDENT OF THE HIGHLAND COMMUNITY SCHOOL CORPORATION, ET AL.   C. A. 7th Cir.   Certiorari denied.

JUSTICE BRENNAN, dissenting.

I dissent from the denial of the petition for certiorari.   I would grant the petition and summarily reverse the judgment of the Court of Appeals insofar as it affirmed the judgment of the District Court.   I cannot agree that the Fourth Amendment authorizes local school and police officials to detain every junior and senior high school student present in a town's public schools and then, using drug-detecting, police-trained German shepherds, to conduct a warrantless, student-by-student dragnet inspection "to see if there were any drugs present."   While school officials acting *in loco parentis* may take reasonable steps to maintain a safe and healthful educational environment, their actions must nonetheless be consistent with the Fourth Amendment.   The problem of drug abuse in the schools is not to be solved by conducting schoolhouse raids on unsuspecting students absent particularized information regarding drug users or suppliers.

I

Petitioner Diane Doe is a 13-year-old student at Highland Junior High School in Highland, Ind., a community of approximately 30,000 residents.   Highland has one junior high school and one senior high school, located in adjacent buildings.   There are 2,780 students enrolled in those schools.

On the morning of March 23, 1979, petitioner went to her first-period class as usual.   Shortly before 9:15, when the class was scheduled to adjourn, petitioner's teacher ordered

everyone to remain seated until further notice. An assistant principal, accompanied by a police-trained German shepherd, a dog handler, and a uniformed police officer, then entered the classroom as one of six teams conducting simultaneous raids at the Highland schools. For the next 2½ hours, petitioner and her classmates were required to sit quietly in their seats with their belongings in view and their hands upon their desks. They were forbidden to use the washroom unless accompanied by an escort. Uniformed police officers and school administrators were stationed in the halls. Guards were posted at the schoolhouse doors. While no student was allowed to leave the schoolhouse, representatives of the press and other news media, on invitation of the school authorities, were permitted to enter the classrooms to observe the proceedings.

The dogs were led up and down each aisle of the classroom, from desk to desk, and from student to student. Each student was probed, sniffed, and inspected by at least 1 of the 14 German shepherds detailed to the school. When the search team assigned to petitioner's classroom reached petitioner, the police dog pressed forward, sniffed at her body, and repeatedly pushed its nose and muzzle into her legs. The uniformed officer then ordered petitioner to stand and empty her pockets, apparently because the dog "alerted" to the presence of drugs. However, no drugs were found. After petitioner emptied her pockets, the dog again sniffed her body, and again it apparently "alerted." Petitioner was then escorted to the nurse's office for a more thorough physical inspection.

Petitioner was met at the nurse's office by two adult women, one a uniformed police officer. After denying that she had ever used marihuana, petitioner was ordered to strip. She did so, removing her clothing in the presence of the two women. The women then looked over petitioner's body, inspected her clothing, and touched and examined the hair on

her head. Again, no drugs were found.[1] Petitioner was subsequently allowed to dress and was escorted back to her classroom.

Each of the 2,780 students present at Highland Junior and Senior High Schools that day was subjected to the mass detention and general exploratory search. Eleven students, including petitioner, were subjected to body searches. Although the police dogs "alerted" 50 times, no junior high school students, and only 17 senior high school students, were found to be in possession of contraband. This contraband included marihuana, drug "paraphernalia," and three cans of beer.

Petitioner brought suit in the District Court for the Northern District of Indiana against various Highland school officials, the Highland Police Chief, and the trainer of the German shepherds used in the search. Claiming a violation of rights secured by the Fourth, Ninth, and Fourteenth Amendments to the Constitution, petitioner sought injunctive and declaratory relief and compensatory and punitive damages under 42 U. S. C. §§ 1983 and 1985 (3) (1976 ed., Supp. III).

After trial, the District Court rejected petitioner's claims. 475 F. Supp. 1012 (1979). First, it found that all aspects of the mass detention and inspection, except for the strip-search, were constitutionally valid. Then, it dismissed petitioner's action against the Police Chief and the dog trainer on the ground that they did not personally participate in the strip-search, and it denied petitioner's claim for damages against the school administrators on the ground that they enjoyed qualified good-faith immunity under *Wood* v. *Strickland,* 420 U. S. 308 (1975).[2]

The Court of Appeals for the Seventh Circuit affirmed all parts of the judgment except for the grant of good-faith im-

---

[1] Apparently, the police dogs alerted to petitioner because she had been playing with her own dog, which was in heat, on the morning of the raid.

[2] The court also denied petitioner's motion for class certification.

munity with respect to the strip-search. 631 F. 2d 91 (1980).[3] Expressly relying upon the District Court's reasoning, it held that the entry into the classrooms "was a justified action taken in accordance with the *in loco parentis* doctrine," and that "the sniffing of a trained narcotic detecting canine is not a search." 475 F. Supp., at 1019. The court also found that there was sufficient evidence of drug activity at the Highland schools to establish "reasonable cause to believe" contraband would be found, and thus to justify the use of drug-sniffing police dogs. Petitioner's request for rehearing en banc was denied, with Chief Judge Fairchild and Judges Swygert, Wood, and Cudahy dissenting. 635 F. 2d 582 (1980).

## II

I cannot agree that the Highland school officials' use of the trained police dogs did not constitute a search. The dogs were led from student to student for the express purpose of sniffing their clothing and their bodies to obtain information that the school authorities and police officers, with their less developed sense of smell, were incapable of obtaining. In the case of petitioner, the dog repeatedly jabbed its nose into her legs. Petitioner testified that the experience of being sniffed and prodded by trained police dogs in the presence of the police and representatives of the press was degrading and embarrassing. I am astonished that the court did not find that the school's use of the dogs constituted an in-

---

[3] With respect to good-faith immunity, the Court of Appeals concluded:

"It does not require a constitutional scholar to conclude that a nude search of a thirteen-year-old child is an invasion of constitutional rights of some magnitude. More than that: it is a violation of any known principle of human decency. Apart from any constitutional readings and rulings, simple common sense would indicate that the conduct of the school officials in permitting such a nude search was not only unlawful but outrageous under 'settled indisputable principles of law' [*Wood* v. *Strickland,* 420 U. S. 308, 321 (1975).] . . . We suggest as strongly as possible that the conduct herein described exceeded the 'bounds of reason' by two and a half country miles." 631 F. 2d, at 92–93.

vasion of petitioner's reasonable expectation of privacy. See *Katz* v. *United States*, 389 U. S. 347 (1967); *Wolf* v. *Colorado*, 338 U. S. 25 (1949).[4]

Moreover, even if the Fourth Amendment permits school authorities, acting *in loco parentis*, to conduct exploratory inspections if they have "reasonable cause to believe" contraband will be found, that standard could not apply where, as here, the school officials planned and conducted the search with the full participation of local police officials.[5] Once school authorities enlist the aid of police officers to help maintain control over the school's drug problem, they step outside the bounds of any quasi-parental relationship, and their conduct must be judged according to the traditional probable-cause standard.[6]

Although a number of incidents involving alcohol, drugs, and related paraphernalia had been reported to school authorities in the seven months preceding the raid on the Highland schools, those incidents involved only 21 students, 13 of

---

[4] Although the court below relied on a number of cases holding that the use of trained dogs to sniff out contraband does not constitute a search, see, *e. g.*, *United States* v. *Solis*, 536 F. 2d 880 (CA9 1976); *United States* v. *Bronstein*, 521 F. 2d 459 (CA2 1975), cert. denied, 424 U. S. 918 (1976); *United States* v. *Fulero*, 162 U. S. App. D. C. 206, 498 F. 2d 748 (1974), those cases involved the sniffing of inanimate and unattended objects rather than persons. Thus, even if those cases correctly state the law, they are inapposite.

[5] For the same reason, I would disagree with the Court of Appeals' conclusion that the mass detention of students by school authorities and police officers did not constitute an unreasonable seizure. See *Terry* v. *Ohio*, 392 U. S. 1 (1968).

[6] The Court of Appeals found it significant that the police officials agreed not to seek prosecution of students found to possess drugs. However, I agree with the dissenting opinion of Judge Swygert that the Fourth Amendment's protection against unreasonable searches is based on " 'the right of the people to be secure in their persons,' " and that it is constitutionally irrelevant that the police officers may have agreed not to arrest students found to be in possession of contraband. 635 F. 2d 582, 584 (1980).

whom had been "withdrawn" from the school system by March 1979. 475 F. Supp., at 1015, and n. 1. At the time of the raid, school authorities possessed no particularized information as to drugs or contraband, suppliers or users. Furthermore, they had made no effort to focus the search on particular individuals who might have been engaged in drug activity at school. The authorities had no more than a generalized hope that their sweeping investigative techniques would lead to the discovery of contraband.

This Court has long expressed its abhorrence of unfocused, generalized, information-seeking searches. See, e. g., Ybarra v. Illinois, 444 U. S. 85 (1979) (mass investigatory detention, interrogation, and search of bar patrons); Davis v. Mississippi, 394 U. S. 721 (1969) (mass detention and fingerprinting of black men fitting general description of perpetrator of crime). But that is precisely the type of search the Highland officials conducted. They certainly had far less than probable cause—or in my view even reasonable suspicion—to believe that each student searched would possess drugs or other contraband. Accordingly, I believe the search was unconstitutional.

We do not know what class petitioner was attending when the police and dogs burst in, but the lesson the school authorities taught her that day will undoubtedly make a greater impression than the one her teacher had hoped to convey. I would grant certiorari to teach petitioner another lesson: that the Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and that before police and local officers are permitted to conduct dog-assisted dragnet inspections of public school students, they must obtain a warrant based on sufficient particularized evidence to establish probable cause to believe a crime has been or is being committed. Schools cannot expect their students to learn the lessons of good citizenship when the school

authorities themselves disregard the fundamental principles underpinning our constitutional freedoms.