WHEELER & CLEVENGER OIL COMPANY, INC., Appellant

v.

Bruce L. WASHBURN, Appellee.

No. 2001–SC–0271–DG.

Supreme Court of Kentucky.

Feb. 19, 2004.

Janet Smith Holbrook, Huddleston, Bolen, Beatty, Porter & Copen, Ashland, Counsel for Appellant.

Bruce L. Washburn, Nashville, TN, Counsel for Appellee.

KELLER, Justice.

## I.  ISSUE

To secure credit with Appellant for his company, Appellee signed guaranty agreements contained on both the front and back of an "Application for Credit." When Appellant sought enforcement of Appellee's guaranties, Appellee claimed that his guaranties were invalid and unenforceable under KRS 371.065 because they did not specify a maximum amount of liability and a termination date.  Did the failure to include those provisions in the guaranties render them invalid and unenforceable? Because KRS 371.065's requirement that a guaranty contain such provisions does not apply to a guaranty set forth on the instrument being guaranteed, we hold that Appellee's guaranties are valid and enforceable.  Accordingly, we reverse the Court of Appeals's opinion that affirmed the trial court's judgment finding Appellee's guaranties invalid and unenforceable.

## II.  BACKGROUND

Appellee was president of HICO Transport, Inc. (hereinafter HICO). On June 14, 1993, he submitted to Appellant an "Application for Credit" on behalf of HICO for the purpose of establishing a line of credit to purchase fuel and other merchandise. At the bottom of the front of the application was a section captioned "GUARANTY AGREEMENT," which Appellee signed as a guarantor of any credit extended to HICO, and it read as follows:

> IN CONSIDERATION OF CREDIT BEING EXTENDED BY WHEELER & CLEVENGER OIL CO., INC. TO THE ABOVE NAMED APPLICANT FOR MERCHANDISE TO BE PURCHASED WHETHER APPLICANT BE AN INDIVIDUAL, A PROPRIETORSHIP, A CORPORATION OR ENTITY, THE UNDERSIGNED GUARANTOR OR GUARANTORS EACH HEREBY CONTRACT AND GUARANTEE TO WHEELER & CLEVENGER OIL CO., INC., THE FAITHFUL PAYMENT, WHEN DUE OF ALL ACCOUNTS OF SAID APPLICANT FOR PURCHASES MADE

WITHIN FIVE YEARS NEXT AFTER THE DATE OF THIS APPLICATION. THE UNDERSIGNED GUARANTOR OR GUARANTORS EACH HEREBY EXPRESSLY WAIVE ALL NOTICE OF ACCEPTANCE OF THIS GUARANTY, NOTICE OF EXTENSION OF CREDIT TO APPLICANT, PRESENTMENT AND DEMAND FOR PAYMENT ON APPLICANT, PROTEST AND NOTICE TO UNDERSIGNED GUARANTOR OR GUARANTORS OR DISHONOR OR DEFAULT BY APPLICANT, PROTEST AND NOTICE TO UNDERSIGNED GUARANTOR OR GUARANTORS OR DISHONOR OR DEFAULT BY APPLICANT OR WITH RESPECT TO ANY SECURITY HELD BY WHEELER & CLEVENGER OIL CO., INC. EXTENSION OF TIME OF PAYMENT TO APPLICANT, ACCEPTANCE OF PARTIAL PAYMENT OR PARTIAL COMPROMISE. ALL OTHER NOTICES TO WHICH THE UNDERSIGNED GUARANTOR OR GUARANTORS MIGHT OTHERWISE BE ENTITLED AND DEMAND FOR PAYMENT UNDER THIS GUARANTY.

On the back of the application, another section also captioned "GUARANTY AGREEMENT" was signed by Appellee, and it read as follows:

TO: WHEELER & CLEVENGER OIL CO., INC

DATE: June 14, 1993

We, Bruce L. Washburn and Jay Crase [1] residing at HICO Transport, Inc., POB 50571, Nashville, TN, for and in consideration of your extending at our request credit to HICO Transport, Inc., hereinafter referred to as the "Company", of which Bruce L. Washburn/Jay Crase is President & Director of Operations hereby personally guarantees to you the payment at WHEELER & CLEVENGER OIL CO., INC. in the state of Kentucky of any obligation of the company and we hereby agree to bind ourselves to pay you on demand any sum which may become due to you by the Company whenever the Company shall fail to pay the same. It is understood that this guaranty shall be a continuing and irrevocable guaranty and indemnity for such indebtedness of the Company. We do hereby waive notice of default, nonpayment and notice thereof and consent to any modification or renewal of the credit agreement hereby guaranteed.

On September 7, 1994, Appellant filed suit against HICO and Appellee for past due amounts, totaling $13,551.26. Appellee defended by asserting *inter alia* that the guaranty agreements that he signed were not enforceable against him because "[KRS 371.065] clearly makes void any guaranty agreement that . . . does not contain provisions including a maximum amount of liability and a termination date" and the subject agreements did not contain such provisions.

After a bench trial, the trial court found that "KRS 371.065 is inapplicable to the case at hand . . . in that this does not involve a guaranty of commercial paper." Consequently, after rejecting Appellee's other defenses, on October 20, 1998, the trial court awarded Appellant judgment against HICO and Appellee. However,

---

1. Jay Crase, who is shown on the credit application as "Director of Operations" for HICO, was referred to in the trial court's "Findings of Fact, Conclusions of Law & Order" as "merely a 'truck driver.'" Regardless, Crase did not sign either guaranty, the personal judgment against him was vacated by the trial court, and he is not a party to this appeal. Thus, no claim is now being asserted against him under the guaranty agreements.

Appellee moved the trial court to "to Alter, Amend or Vacate its judgment" because, he asserted, the trial court erroneously relied upon *APL, Inc. v. Ohio Valley Aluminum, Inc.,*[2] a case that interpreted KRS 371.065 prior to its later amendment, which applied the statute's requirements "to all guaranty contracts, not just commercial paper." The trial court agreed with Appellee and held that "[t]he guaranty agreement in question does not meet the minimum standards as required by statute because it fails to specify the maximum liability of the guarantor and does not specify a termination date which renders it invalid and unenforceable. As a result, on February 6, 1999, the trial court by amended judgment vacated "so much of the Court's Judgment ... granting personal Judgment [against Appellee]" but let stand Appellant's judgment against HICO. Appellant's subsequent motion to alter, amend or vacate the amended judgment was overruled, and it appealed from the amended judgment.

The Court of Appeals agreed with the trial court's conclusions that, as a result of its amendment in 1990, KRS 371.065 applies to all guaranty agreements, including the guaranty agreement signed by [Appellee][,]" and thus "[Appellee's] guaranty does not satisfy the statute, and is, therefore, unenforceable." Accordingly, the Court of Appeals affirmed the trial court. We granted Appellant's motion for discretionary review, and we reverse.

## III. ANALYSIS

◼ The dispositive issue in this case is the interpretation of KRS 371.065, and since the construction and application of statutes is a matter of law, we interpret KRS 371.065 de novo[3] without deference to the interpretations adopted by lower courts.[4]

KRS 371.065 was first enacted in 1986[5] and the Act creating the statute was titled "AN ACT relating to commercial paper."[6] When first enacted, KRS 371.065 read as follows:

No guaranty which is not written on the instrument involved shall be valid or enforceable unless it is in writing signed by the guarantor and contains provisions specifying the amount of the maximum aggregate liability of the guarantor thereunder, and the date on which the guaranty terminates, provided that such termination shall not affect the liability of the guarantor with respect to:

(1) Obligations created or incurred prior to such date, or

(2) Extensions or renewals of, interest accruing on, or fees, costs or expenses incurred with respect to, such obligations on or after such date.

Kentucky's Constitution requires that "[n]o law enacted by the General Assembly shall relate to more than one subject, and that shall be expressed in the title[.]"[7] Because of the title of the Act and the "constitutional mandate," the Court of Appeals in *APL, Inc. v. Ohio Valley Alumi-*

---

**2.** Ky.App., 839 S.W.2d 571 (1992).

**3.** *Bob Hook Chevrolet Isuzu, Inc. v. Commonwealth, Transp. Cabinet,* Ky., 983 S.W.2d 488, 490 (1998) ("In the present case the questions to be answered deal with the interpretation of statutes. The construction and application of statutes is a matter of law and may be reviewed de novo.").

**4.** *Cinelli v. Ward,* Ky.App., 997 S.W.2d 474, 476 (1998) ("We review questions of law de novo and, thus, without deference to the interpretation afforded by the circuit court.").

**5.** 1986 Ky. Acts ch. 485, § 1.

**6.** *Id.*

**7.** Ky. Const. § 51.

*num* held that KRS 371.065, as first enacted, applied exclusively to guaranties of commercial paper.[8]

In 1990, KRS 371.065 was amended to read as follows:

(1) No guaranty of an indebtedness which either is not written on, or does not expressly refer to, the instrument or instruments being guaranteed shall be valid or enforceable unless it is in writing signed by the guarantor and contains provisions specifying the amount of the maximum aggregate liability of the guarantor thereunder, and the date on which the guaranty terminates. Termination of the guaranty on that date shall not affect the liability of the guarantor with respect to:

(a) Obligations created or incurred prior to the date; or

(b) Extensions or renewals of, interest accruing on, or fees, costs or expenses incurred with respect to, the obligations on or after the date.

(2) Notwithstanding any other provision of this section, a guaranty may, in addition to the maximum aggregate liability of the guarantor specified therein, guarantee payment of interest accruing on the guaranteed indebtedness, and fees, charges and costs of collecting the guaranteed indebtedness, including reasonable attorneys' fees, without specifying the amount of the interest, fees, charges and costs.[9]

The 1990 Act amending the statute was titled "AN ACT relating to guaranties." Both the trial court and the Court of Appeals held that KRS 371.065 as amended applied to all guaranties.[10] We agree. An Act's title may be considered in its interpretation.[11] The title of the 1990 Act clearly showed that its provisions applied to all guaranties. But the inquiry does not end there.

---

8. *APL, Inc.*, 839 S.W.2d at 575.

9. 1990 Ky. Acts ch. 38, § 1.

10. The trial court based its decision on Appellee's argument that "the legislature amend[ed] the bills [sic] title to 'An Act Relating to Guaranties,['] from 'An Act relating to Commercial Paper,'" and thus, the trial court ruled that the statute "was amended and given broader application to apply to all guaranty agreements instead of just commercial paper." The Court of Appeals, however, stated that "[t]he title of KRS 371.065 is 'Requirements for valid, enforceable guaranty,' which implies the elements to be met therein would apply to all guaranty agreements." Although we agree with the Court of Appeals's interpretation of the statute, we would note that "[t]itle heads, chapter heads, section and subsection heads or titles[] ... in the Kentucky Revised Statutes, do not constitute any part of the law[.]" KRS 446.140. The titles of sections and subsections in the statutes, vis-a-vis the titles of Acts, are often renamed and inserted by the reviser of the statutes after the enactment of the statute, *See* KRS 7.136(1) ("The [reviser of the statutes] ... shall not alter the sense, meaning, or effect of any act of the General Assembly, but may: ... (b) Change the wording of headnotes[.]"), and therefore, are not part of the legislature's deliberations and debate. For that reason, unlike an Act's title, *see infra* note 11, the title of any *statute*, including KRS 371.065, should not be used as an aid in its interpretation.

11. *Meyers v. Walter*, Ky., 253 S.W.2d 595, 597 (1952) ("This construction is further supported by the title of the Act...."); *Fayette County Fiscal Court v. Fayette County*, 314 Ky. 595, 236 S.W.2d 455 (1950); *Ingram's Adm'r v. Advance Motor Co.*, 283 Ky. 87, 140 S.W.2d 840, 841 (1940) ("We have held frequently that in the construction of an Act its title is to be read in connection with it."); *Logsdon v. Howard*, 280 Ky. 342, 133 S.W.2d 60, 62 (1939) ("The meticulous care with which the legislature circumscribed its title to the 1938 act not only sustains the interpretation we have made of the described situation, but it even goes so far as to not admit of any other interpretation.").

Both the trial court and the Court of Appeals concluded that the guaranty agreements [12] did not satisfy the requirements of KRS 371.065 because the agreements did not specify Appellee's maximum aggregate liability and a termination date. Accordingly, the courts held the agreements unenforceable. In support of its holding, the Court of Appeals stated that "the language of the statute, taken as a whole, refers to all guaranties, not just to those not written directly on the instruments to be guaranteed or specifically referencing those instruments." It focused on subsection (2) of the statute and stated that "[c]leary, this portion of KRS 371.065 is not meant to apply only to a certain category of guaranties but all guaranty agreements." The Court reasoned that "[a]fter all KRS 371.065 is a statute that is obviously directed at protecting guarantors" and stated, "[w]e see no reason why this protection should only be afforded to a certain class of guarantors and not to others." We disagree with the Court of Appeals's conclusion that the guaranty agreements were invalid and unenforceable under KRS 371.065.

The most commonly stated rule in statutory interpretation is that the "plain meaning" of the statute controls.[13] This Court has steadfastly adhered to the plain-meaning rule [14] "unless to do so would constitute an absurd result." [15] The plain-meaning rule is consistent with directions provided by the legislature on how to interpret the statutes enacted by it.[16]

KRS 371.065 plainly provides that a guaranty agreement "which either is ... written on, or ... expressly refer[s] to, the instrument or instruments being guaranteed" is not required to specify the guaran-

12. Both courts refer to only one (1) guaranty agreement, but it is undisputed that Appellee signed two (2) guaranty agreements, one on the front of the application and one on its back.

13. RONALD BENTON BROWN & SHARON JACOBS BROWN, STATUTORY INTERPRETATION: THE SEARCH FOR LEGISLATIVE INTENT § 4.2, at 38 (NITA, 2002).

14. *Executive Branch Ethics Com'n v. Stephens*, Ky., 92 S.W.3d 69, 73 (2002) ("The words of the statute are to be given their plain meaning unless to do so would constitute an absurd result."); *Commonwealth v. Plowman*, Ky., 86 S.W.3d 47, 49 (2002) ("[A] reviewing court ... must interpret the statute according to the plain meaning of the act and in accordance with the legislative intent."); *County of Harlan v. Appalachian Regional Healthcare, Inc.*, Ky., 85 S.W.3d 607, 615 (2002) ("[T]he plain text of the statutes should govern and this Court should give effect to the ordinary meaning of the words therein."); *Kentucky Registry of Election Finance v. Blevins*, Ky., 57 S.W.3d 289, 295 (2001) ("This interpretation does not offend the plain meaning of the statute."); *Hardin County Schools v. Foster*, Ky., 40 S.W.3d 865, 868 (2001) ("The proper standard of review of a question of law ...

involves the interpretation of a statute according to its plain meaning and its legislative intent."); *Bob Hook Chevrolet Isuzu, Inc.*, 983 S.W.2d at 492 ("A statute should be construed, if possible, so as to effectuate the plain meaning and unambiguous intent expressed in the law."); *Nelson Steel Corp. v. McDaniel*, Ky., 898 S.W.2d 66, 70 (1995) ("Courts are required to give the words of a statute their plain meaning.").

15. *Executive Branch Ethics Com'n v. Stephens*, 92 S.W.3d at 73.

16. KRS 446.015 ("All bills introduced in the General Assembly after June 17, 1978, shall be written in nontechnical language and in a clear and coherent manner using words with common and everyday meanings. Enactment of a bill by the General Assembly shall be a conclusive presumption that such bill conforms to this section."); KRS 446.080(4) ("All words and phrases shall be construed according to the common and approved usage of language, but technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed according to such meaning.").

tor's maximum liability or the guaranty's termination date. The Court of Appeals's interpretation overlooks that "[n]o guaranty of an indebtedness" is modified by a restrictive clause, *i.e.,* "which either is not written on, or does not expressly refer to, the instrument or instruments being guaranteed." Rather than considering the language of the statute as a whole as it professes, the Court of Appeals's interpretation has the effect of deleting the modifying clause from the statute. KRS 371.065's requirement that a guaranty state the guarantor's maximum liability and the guaranty's termination date is a consumer-protection provision designed to protect the guarantor by reducing the risk of a guarantor agreeing to guarantee an unknown obligation. When the guaranty agreement is found on the document being guaranteed, however, that risk is negligible, which KRS 371.065 recognizes by exempting such guaranty agreements from its heightened requirements. Here, the guaranty agreement is "written on" the credit application in two places. Thus, in accordance with the plain-meaning rule of statutory interpretation, we hold that, although KRS 371.065 otherwise applies to the guaranty agreements, *e.g.,* the agreements may "guarantee payment of interest accruing on the guaranteed indebtedness, and fees, charges and costs of collecting the guaranteed indebtedness, including reasonable attorneys' fees, without specifying the amount of the interest, fees, charges and costs," [17] the agreements were not required to state either Appellee's maximum liability or a termination date.

## IV. CONCLUSION

For the above reasons, we reverse the Court of Appeals and remand this case to the Lawrence Circuit Court for entry of a judgment in favor of Appellant.

All concur.