The WESSELS COMPANY, LLC, and Thomas Seiter, Appellants,

v.

SANITATION DISTRICT NO. 1 of Northern Kentucky; Boone County; Campbell County; City of Alexandria; City of Bellevue; City of Bromley; City of Cold Springs; City of Covington; City of Crescent Springs; City of Crestview Hills; City of Crestview; City of Dayton; City of Edgewood; City of Elsmere; City of Erlanger; City of Fort Mitchell; City of Fort Thomas; City of Fort Wright; City of Highland Heights; City of Independence; City of Kentonvale; City of Lakeside Park; City of Latonia Lakes; City of Ludlow; City of Melbourne; City of Newport; City of Park Hills; City of Ryland Heights; City of Silver Grove; City of Southgate; City of Taylor Mill; City of Union; City of Villa Hills; City of Wilder; City of Woodland; Kenton County; and Kentucky Transportation Cabinet, Appellees.

No. 2005–CA–002418–MR.

Court of Appeals of Kentucky.

March 9, 2007.

Discretionary Review Denied by Supreme Court Dec. 12, 2007.

Todd V. McMurtry, Mark D. Guilfoyle, Kevin F. Hoskins, Deters, Benzinger & Lavelle, P.S.C., Crestview Hills, KY, for appellants.

Wm. T. Robinson III, John C. Bender, Luann Devine, Greenebaum Doll & McDonald, Gerald F. Dusing, Brian M. Ellerman, Adams, Stepner, Woltermann & Dusing, P.L.L.C., Covington, KY, for appellee, Sanitation District No. 1.

Christopher J. Mehling, Taliaferro, Mehling, Shirooni, Carran & Keys, Covington, KY, for appellees, Cities Of Elsmere, Independence and Ludlow, Kentucky.

John C. Fischer, Dayton, KY, for appellee, City of Dayton, Kentucky.

J.R. Schrand, Boone County Attorney, Burlington, KY, for appellee, County of Boone, Kentucky.

Frank A. Wichmann, Wichmann & Schaffer, Erlanger, KY, for Appellees, Cities of Erlanger, Edgewood, Taylor Mill, Alexandria, Crescent Springs, Crestview Hills, Villa Hills, Ft. Mitchell, Ft. Thomas, Lakeside Park, Covington, Park Hills, Highland Heights, Bellevue, Melbourne, Newport, Southgate, Wilder, Silver Grove and the Kentucky Transportation Cabinet.

Greg D. Voss, Edgewood, KY, for Appellee, City of Union, Kentucky.

Before ABRAMSON, Judge; KNOPF and ROSENBLUM, Senior Judges.[1]

### OPINION

KNOPF, Senior Judge.

At issue in this appeal is the statutory authority of appellee Sanitation District No. 1 of Northern Kentucky (the "district") to implement a system for managing of storm water runoff and to impose a fee in connection with that service. The Boone Circuit Court entered summary judgment on appellants' claim that KRS Chapter 220 does not afford the district authority to manage separate storm water sewer systems or permit a storm water surcharge. The trial court concluded that the district's storm water management program falls within the enumeration of functions set out in KRS 220.030 and that

---

1. Senior Judges William L. Knopf and Paul W. Rosenblum sitting as Special Judges by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

authority for the surcharge is found in KRS 220.515 and 510. Finding no error in the trial court's analysis and construction of the statutory provisions, we affirm the judgment in this case.

The facts are not in dispute. The district encompasses the Kentucky counties of Boone, Campbell, and Kenton and includes the thirty-two cities from the second to sixth class involved in this action which are located within those counties. Prior to July 1, 1995, the district provided a facility for treatment of sanitary sewage that was collected and drained into its sanitary sewage collection system by way of connections to the separate systems of sanitary sewers owned, operated, and maintained by the various city and county governments within the district's jurisdiction. At that time, the district had no involvement with the storm drainage systems of the various city and county governments, with the exception of combined systems that were designed to convey both sanitary sewer and storm drainage to the district's collection system.

Recognizing that storm water discharges contributed significantly to the pollution of the nation's waterways, Congress, with the enactment of the federal Water Quality Act of 1987, required the United States Environmental Protection Agency to develop a program for regulating municipal storm water discharges. Regulations subsequently put in place were intended to address public health risks associated with storm water runoff which had been shown to contain high levels of sediments and other pollutants such as phosphorus and nitrogen from fertilizers, pesticides, petroleum products, and construction chemicals that "can be toxic to aquatic organisms and degrade water for drinking and water-contact recreation." 57 Fed.Reg. at 41344, 41345 (September 9, 1992). A large influx of storm water into sanitary sewage systems had also been shown to dilute the system's ability to properly treat sanitary waste. In response to federal regulations adopted pursuant to that mandate, the Kentucky General Assembly in 1994 amended KRS 220.030 by adding subsection (6) to the stated purposes for which sanitation districts may be established. Subsection (6) initially provided that development and implementation of "plans for the collection and disposal of storm drainage to the extent that collection and disposal of storm drainage is required by applicable federal and state regulations" was a purpose for which a sanitation district might be established. A subsequent amendment of that subsection eliminated the limiting language so that a proper purpose for the districts was the development and implementation of "plans for the collection and disposal of storm drainage."

The many small cities within the district soon realized that they were not financially capable of compliance with the federal regulations regarding storm water and turned to the district to provide those services. Accordingly, the local government entities involved in this action, as well as the Kentucky Transportation Cabinet, entered into interlocal agreements with the district allowing it to assume responsibility for management of storm water within its boundaries. After the district began imposing a fee for storm water management, appellants instituted this action seeking: 1) class certification; 2) a declaration that the district has no authority to impose such a fee; 3) an order enjoining the district's collection of the fee; and 4) a refund of fees previously collected. The complaint also alleged that the district could not enter into agreements with the local governments to collect the storm water management fee and that the fee is not reasonably related to the services received by property owners within the service area.

In its thorough and well-reasoned opinion, the trial court found specific statutory authority for the district's implementation of a storm water drainage plan, for its contractual agreements with the various local governments within its boundaries, and for the assessment of a surcharge for its storm water management services. Appellants argue in this appeal, however, that the trial court erred in its construction of KRS Chapter 220 and failed to give effect to the limitations set out in KRS 220.280. We find no error in the trial court's interpretation of the applicable statutes.

■ As noted by the appellees, resolution of this appeal is governed by the "plain meaning rule" reiterated by the Supreme Court of Kentucky in *Wheeler and Clevenger Oil Co., Inc. v. Washburn,* 127 S.W.3d 609, 614 (Ky.2004):

The most commonly stated rule in statutory interpretation is that the "plain meaning" of the statute controls. This Court has steadfastly adhered to the plain-meaning rule "unless to do so would constitute an absurd result." The plain-meaning rule is consistent with directions provided by the legislature on how to interpret the statutes enacted by it. [Footnotes omitted.]

Like the trial court, we are convinced that the addition of subsection (6) to KRS 220.030 clearly and unambiguously expressed the General Assembly's intent that among the proper functions of sanitation districts is the development and implementation of "plans for the collection and disposal of storm drainage."

Against this recent expression of legislative intent, appellants rely upon the limitations contained in KRS 220.280, enacted in 1942. We find this reliance unpersuasive. Contrary to appellants' constrained interpretation of that statute, we find the following language in KRS 220.280 complementary to the authority contained in KRS 220.030:

(1) The powers of the board of directors shall be limited to the construction, maintenance and operation of such works as are necessary to carry out the purposes of the district in improvement of sanitation, **as set forth in KRS 220.030.** [Emphasis added.]

Plainly, the statute gives the district's board of directors all powers necessary to carry out the purposes of KRS 220.030, which in subsection (6) includes the implementation of a storm water drainage plan.

Further, as explained by the trial judge, appellants place a strained and unreasonable interpretation upon the term "sanitation" as used in KRS 220.280. Reference to the definitions set out in KRS 220.010 dispels appellants' construction of the term "sanitation" as being limited to "sewage and other liquid waste":

1) "Sanitary works," "improvements," "sanitary system" or "sanitary sewers," means **any works constructed by a sanitation district in accordance with the purposes of KRS 220.010 to 220.540, as set forth in KRS 220.030.** [Emphasis added.]

Thus, despite appellants' corollary complaint that the trial judge failed to consider KRS Chapter 220 in its entirety when interpreting its various enactments, review of his opinion makes clear that is precisely what he did. We find no error in the trial judge's conclusion that the plain meaning of KRS 220.030(6), in the context of the chapter as a whole, provides the necessary statutory support for the district's implementation of a separate storm water drainage plan.

■ Next, appellants insist that there is no statutory authority for the assessment of a surcharge in connection with the district's storm water drainage plan. Again,

we disagree. In concluding that the surcharge could be imposed, the trial court first cited the following enumeration of the powers and duties afforded the district under KRS 220.110(1):

The district shall then be a political subdivision, except as otherwise specifically provided in KRS 220.530, with power to sue and be sued, contract and be contracted with, incur liabilities and obligations, exercise the right of eminent domain, **assess, tax,** and contract for rentals as herein provided, issue bonds, and do and perform all acts herein expressly authorized and all acts necessary and proper for the carrying out of the purpose for which the district was created, and for executing the powers with which it is invested. [Emphasis added.]

Like the trial court, we are convinced that that statute, read in conjunction with the powers prescribed in KRS 220.515, supplies the requisite statutory underpinnings for the surcharge:

**The district may establish a surcharge or other rate, fee, or charge to be made applicable to users in areas where facilities are to be acquired, constructed, or established, and to amortize part or all of the costs thereof, in addition to the charge authorized by KRS 220.510.** The surcharges, rates, fees, or charges shall be determined on the basis of one (1) or more of the factors stated in KRS 220.510, and may include, at the discretion of the district, a finance charge not to exceed ten percent (10%). In carrying out any rate, fee, or charge classification, the district shall follow the procedures set forth in KRS 220.593(2). [Emphasis added.]

The "charge authorized by KRS 220.510" is predicated upon the following factors:

The board of directors shall, by resolution, determine the rates and compensation or rentals to be charged for the use of the sanitary works. The board of directors may provide for a sewer service charge to be imposed and collected, beginning at the time the plan for the improvement has been approved by the Environmental and Public Protection Cabinet and work is begun on plans and specifications for the improvement. **The rates shall at all times be reasonable, taking into account the cost of the works, the cost of operation and maintenance, and the amount necessary for the amortization of the bonds issued to finance the works. The same schedule of rates and charges shall apply to all users of the same class. The rates shall be binding upon all users of the system.** The board may alter and revise the rates in its discretion. In case of failure of any user to pay for services rendered, the board may compel payment and may enjoin further use until the payment is made, or it may institute an action in any court having jurisdiction for the recovery of charges for services rendered.... [Emphasis added.]

We view the surcharge as authorized by KRS 220.510.

Although appellants seek to make the simple complex by injecting into the discussion proposed legislation, legislative history and the like, the bottom line is that arguments based upon those documents are misplaced where the statutes in question are clear and unambiguous. As stated at the outset, we are to view Chapter 220 in light of its plain meaning unless to do so would lead to absurd or unreasonable results. Utilizing that criterion, we are convinced that the only reasonable view of these enactments is that which was ascribed to them by the trial judge, including the right to impose a surcharge in

connection with the provision of a storm drainage system.

Having concluded that implementation of a storm water drainage system is a proper function of the district, it would be absurd to suggest that it could not impose a surcharge to finance a service required by federal regulation. And to that end, it is clear KRS 220.515 and 510 were intended by the General Assembly to provide the requisite authority to do so. Although appellants assert that the existence of proposed legislation demonstrates that the statutes as enacted provide no authority for implementation of a separate storm sewer system or imposition of a management fee, we agree with appellees that the only relevant consideration is the intent of the legislature as expressed in its enactments. It is indeed a novel approach to statutory construction to suggest that the intent of a legislative body may be ascertained by reference to bills it declined to enact.

In sum, we concur in the opinion of the Boone Circuit Court. A plain reading of the statutes makes clear the legislature's intent that the management, treatment, and disposal of storm water runoff is a matter to be addressed by sanitation districts. We therefore affirm the judgment confirming the district's authority to do so in this case.

ALL CONCUR.