RENDERED: JUNE 17, 2021
TO BE PUBLISHED

# Supreme Court of Kentucky

2019-SC-0315-DG

JEFFERSON COUNTY SHERIFF'S OFFICE                          APPELLANT

V.
ON REVIEW FROM COURT OF APPEALS
NO. 2018-CA-00406
FRANKLIN CIRCUIT COURT NO. 16-CI-00886

KENTUCKY RETIREMENT SYSTEMS                               APPELLEE

**OPINION OF THE COURT BY CHIEF JUSTICE MINTON**

**REVERSING AND REMANDING**

This appeal concerns the application of Kentucky Revised Statute (KRS) 61.598, the pension-spiking statute. The statute is aimed at preventing artificial increases in "creditable compensation" to pension-member employees in the last five years preceding retirement with the effect of spiking the retiree's employment benefits and resulting in increased costs to the pension system.

In the present case, the Kentucky Retirement Systems applied the spiking statute to assess actuarial costs to the Jefferson County Sheriff's Office for an alleged pay increase it found where a JSCO employee took unpaid leave for two months, causing a temporary decrease in gross compensation in that year, but then returned to his pay before. The primary question before the Court is whether the Retirement Systems properly applied KRS 61.598 in this circumstance.

We find that no true pay increase occurred to implicate the statute, that the purported increase was essentially a return to the status quo, interrupted by a bona fide illness, with no indication otherwise that the employer increased the employee's compensation or benefits. While the Retirement Systems properly applied the language of the statute under a defensible interpretation, it is an overly mechanical application that misses the substance of what really happened here. The application would appear arbitrary and would seem to do little, if anything, to further the purpose of the statute of preserving the pension system. Accordingly, we reverse and remand to the trial court to vacate the assessment imposed on JCSO.

## I. FACTUAL BACKGROUND

The facts at issue are clear and undisputed. Jerry Duncan worked as a full-time deputy sheriff when he retired from the Jefferson County Sheriff's Office in October 2014. In that position, he was classified as a "hazardous-duty member" of the County Employees Retirement Systems, one of the pension plans administered by the Kentucky Retirement Systems. Jerry was paid hazardous-duty pay at an hourly rate. Each year, his compensation would increase by approximately 2% under a collective-bargaining agreement with JCSO.

In 2012, Duncan fell seriously ill, and between August 16 and October 15, 2012, he took unpaid leave for a period spanning approximately four two-week pay periods. In total, he took approximately 270 hours of unpaid leave, causing him to make $5,396.94 less in Fiscal Year 2012-2013 than the year

2

after. Duncan recovered and returned to work full time in the same position and for essentially the same compensation.

Duncan's annual compensation in his last five years of employment was as follows:

| Fiscal Year (identified later by first number) | Gross Annual Compensation | Percentage Difference from FY Prior |
|---|---|---|
| 2009-2010 (FY09) | $43,170.64 | n/a |
| 2010-2011 (FY10) | $41,521.97 | - 3.82% |
| 2011-2012 (FY11) | $43,503.25 | + 4.07% |
| 2012-2013 (FY12) | $38,086.98 | - 12.46% |
| 2013-2014 (FY13) | $44,056.18 | + 15.67% |

As the chart shows, there was an approximately $5,400 difference in Duncan's gross pay between Fiscal Years 2012-2013 (FY12) when he took leave and 2013-2014 (FY13) when he returned. Notably, Duncan's hourly pay and gross annual pay returned to nearly what it was before he took leave.

The Retirement Systems identified this difference as a spike in creditable compensation under KRS 61.598, perceiving an increase in compensation from FY12 to FY13. The Retirement Systems sought from JCSO an explanation as to this difference in gross compensation and determined that Duncan did not experience a bona fide promotion to cause the purported increase. Accordingly, it imposed a $2,951.40 assessment on JCSO for purportedly increased actuarial costs to the extent attributable to the increase over 10%. In response, JCSO filed a Form 6481, Employer Request for Post-Determination of Bona Fide Promotion or Career Advancement, in which it confirmed the absence of a bona fide promotion and that the difference in pay was attributable solely to Duncan's unpaid sick leave. The Retirement Systems

3

maintained its position, finding no exception under KRS 61.598 for unpaid sick leave, that it considered the assessment appropriate given the lack of a bona fide promotion or career advancement to justify the difference.

JCSO timely pursued an administrative appeal. The Hearing Officer assigned to JCSO the burden to prove Duncan experienced a bona fide promotion and to explain the difference in compensation.[1] The only witness, JCSO's human-resources officer, established the same facts the Retirement Systems already relied upon. The Hearing Officer found in favor of the Retirement Systems for the same reasons: a pay increase with no corresponding promotion or career advancement. JCSO appealed to the Retirement Systems's Administrative Review Board, which affirmed, and clarified the burden of proof was properly JCSO's to prove the existence of a bona fide promotion.

JCSO timely filed for judicial review in Franklin Circuit Court. The circuit court found for the Retirement Systems, finding the lack of promotion supported by substantial evidence, that KRS 61.598 as applied was not arbitrary, and that the circuit court was thus bound by the Board's decision. It found the 2013 version of KRS 61.598 contained no exception for unpaid sick leave; that the statute was not overbroad or arbitrary, that its directive was rationally related to a legitimate state interest; that it was not being improperly

---

[1] The Hearing Officer varied in its statement of the assignment of this burden of proof as to whether it was JCSO's or the Retirement System's to carry but resolved the hearing as if it had finally assigned the burden to JCSO.

4

retroactively applied to JCSO since it applied to retirements "on or after January 1, 2014;" and that the burden of proof was properly assigned to JCSO under KRS 13B.090(7), as the assessment was not a penalty or depriving a benefit to JCSO previously granted.

JCSO appealed, and the Court of Appeals affirmed in all respects, finding itself constrained by the language of the statute and concluding neither KRS 61.598 nor 105 KAR 1:140 Section 8 was arbitrary. This appeal followed.

## II. ANALYSIS

Ultimately, this appeal turns on the interpretation and application of a statute. This case has so far been determined by a mechanical application of the General Assembly's apparent directive. But the application and interpretation of statutes are matters of law we review de novo.[2] In a very general sense, our review of the decision of an administrative agency is highly deferential, and we reverse only if the decision was arbitrary, unsupported by substantial evidence, or otherwise erroneous as a matter of law.[3]

We find the application of KRS 61.598 in this circumstance erroneous as a matter of law, and that the result was arbitrary. Accordingly, we reverse the Court of Appeals as to how the statute applies in a situation like this.

---

[2] *Wheeler & Clevenger Oil Co. v. Washburn*, 127 S.W.3d 609, 612 (Ky. 2004).

[3] *See Hilltop Basic Res., Inc. v. Cnty. of Boone*, 180 S.W.3d 464, 467 (Ky. 2005); *McNutt Constr./First Gen. Servs. v. Scott*, 40 S.W.3d 854, 860 (Ky. 2001); *American Beauty Homes Corp. v. Louisville & Jefferson Cnty. Planning and Zoning Comm'n*, 379 S.W.2d 450, 456 (Ky. 1964).

**A. KRS 61.598 does not apply to JCSO because there was not a true increase in creditable compensation to the retiring employee.**

Fundamentally, the substantive issue is whether Duncan's creditable compensation increased when he returned to work after taking unpaid sick leave. JCSO maintains that the difference in Duncan's total compensation between FY12 and FY13 should not be considered an increase because Duncan's pay, including his gross compensation, merely returned to the status quo established in the years before he took leave. The Retirement Systems justifies its assessment by characterizing the return to Duncan's standard gross pay as an increase in creditable compensation. And the Retirement Systems is correct, and it is not at all in dispute, that the change was not caused by a bona fide promotion or career advancement. But we agree with JCSO, that the statute does not and was not meant to apply in this instance, although a mechanical application of the statute would initially seem required. Differing from the approach taken by the tribunals below, we do not perceive the need for a separate, express exception for unpaid sick leave because we hold that the plain language of the statute indicates the spiking statute does not apply to the facts of this case.

The 2013 version of the provision imposing cost assessments on employers, then KRS 61.598(2),[4] read as follows:

---

[4] The current version of the statute has the same substantive provision under KRS 61.598(5)(a):

> For employees retiring on or after January 1, 2014, but prior to July 1, 2017, the last participating employer shall be required to pay for any additional actuarial costs resulting from annual increases in an employee's creditable compensation greater than ten percent (10%) over

6

> For employees retiring on or after January 1, 2014, the last participating employer shall be required to pay for any additional actuarial costs resulting from annual *increases* in an employee's creditable compensation greater than ten percent (10%) over the employee's last five (5) fiscal years of employment that are not the direct result of a bona fide promotion or career advancement. The cost shall be determined by the retirement systems and the system may promulgate administrative regulations in accordance with KRS Chapter 13A to administer this section.[5]

*Creditable compensation* is defined under KRS 61.510, in the simplest terms for our purposes, as an employee's *gross* annual compensation, a numerical figure that typically appears on an employee's W-2 form each year.[6] But a related word *increase* was left undefined in its statutory context. So the meaning of the term *increase* under KRS 61.598 must derive its meaning implicitly from its context and legislative intent. We ascribe an ordinary meaning to the word.[7] Merriam-Webster defines *increase* as a verb, "to *make greater* in size, amount, or number," and as a noun, "something *added* (as by growth)."[8] Some common synonyms of the word include "augment, enlarge, or multiply."[9] Consistent with these definitions, the term *increase* appears to be used under KRS 61.698

---

the employee's last five (5) fiscal years of employment that are not the direct result of a bona fide promotion or career advancement. The cost shall be determined by the retirement systems.

[5] (emphasis added).

[6] *See* KRS 51.510(a).

[7] *Ky. Occupational Safety & Health Rev. Comm'n v. Estill Cnty. Fiscal Ct.*, 503 S.W.3d 924, 929 (Ky. 2016) ("When interpreting an undefined term in a statute, such as "complaint," we look to traditional canons of statutory construction to determine legislative intent. First, we interpret the law by applying the plain and ordinary meaning of relevant language within the statute.").

[8] *Increase,* Merriam-Webster.com Thesaurus, https://www.merriam-webster.com/thesaurus/increase, (accessed May 13, 2021).

[9] *Id.*

to refer to an upward change in creditable compensation between fiscal years. In neither its ordinary use as a verb or noun do we find JCSO increased Duncan's pay or that the change between FY12 and FY13 constituted an increase. For KRS 61.598 to apply, there must be an increase in gross compensation, not merely a change.

To the credit of the Retirement Systems and the tribunals below, the definition of *creditable compensation* essentially directs that gross compensation be the measure for year-to-year change as it arrives at a figure based on the numerical entry on an employee's federal W-2. Increases in creditable compensation under KRS 61.598 are directed to be viewed as discrete changes in gross compensation from year to year. But we interpret the term *increase* under KRS 61.598 to require another layer of analysis in cases like this one.

The *increase* inquiry may be more difficult to settle for employees working for an hourly wage than for salaried employees because some fluctuation in gross pay is to be expected for a variety of reasons foreseeable and unforeseeable, justified and unjustified. But it is certainly indicative here that the only meaningful difference in Duncan's pay between fiscal years was his pay conceptualized specifically and solely as differences in gross annual compensation. Duncan's hourly rate remained essentially the same from year to year and was apparently already predetermined to increase no more than 2% per year according to a collective-bargaining agreement with JCSO. As Duncan's work and pay merely returned to the status quo in years before he

8

took unpaid sick leave, the facts demonstrate that any net increase was only 1.3% between fiscal years 11 and 13, his two highest compensated years of the three considered—far less than the increase over 10% required to trigger KRS 61.598. We simply cannot view, as the Retirement Systems does, the annual difference as a 15% *increase* in Duncan's creditable compensation sufficient to trigger KRS 61.598. The difference between fiscal years 12 and 13 could only be considered an *increase* in the most relative and narrow sense of that word.

JCSO would appear correct that the General Assembly used language to target affirmative *increases* in compensation, especially those more questionable increases in anticipation of retirement. This case does not present that sort of arrangement or fact pattern, so our holding is more consistent with the legislature's purpose. In Duncan's case we have in actuality a temporary, not to mention justified, decrease in creditable compensation, not an increase.

The Court notes that it is not creating a different rule for hourly workers, because *creditable compensation*, again, is defined primarily in terms of gross annual compensation, and we do not wish to disturb or undermine that definition. We only hold that the statute's use of the word *increase* requires some reasoned flexibility in application and perhaps sometimes another level of thoughtful analysis. For purposes of determining whether there has been an actual increase in creditable compensation, not merely a restoration of total pay, the statute would require the Retirement Systems to undertake an examination of the surrounding circumstances. KRS 61.598 does not require

9

the Retirement Systems to view numerical differences in gross pay in a vacuum, but in fact implicitly requires it to examine, holistically and substantively, the reasons for a change in compensation. To be sure, the *bona fide promotion or career advancement* element is an important determination to make in most circumstances, but it is not the only operative term in the statute. *Increase* is the guiding term, and we find the Retirement Systems's application here disconnected from the meaning of that word, rendering its application of the statute arbitrary and unsupported by law and warranting reversal. The statute does not apply, and the assessment was improper.

We address other issues raised here more briefly, although they do not ultimately affect the outcome of this case.

### 1. The Retirement Systems is directed to identify compensation changes between each applicable year, not a single change over five years.

This point already necessarily factored into our analysis above, but since it is disputed by the parties, we clarify this element of the statute. JCSO argues briefly that the plain language of the statute required the Retirement Systems to determine whether there was a 10% total compensation increase over the entire five years preceding retirement. We disagree.

The 2017 version of KRS 61.598(2)(a) reads:

> [T]he systems shall, for *each* of the retiring employee's last five (5) fiscal years of employment, identify any fiscal year in which the creditable compensation increased at a rate of ten percent (10%) or more *annually over the immediately preceding* fiscal year's creditable compensation. The employee's creditable compensation in the fiscal year *immediately prior* to the employee's last five (5) fiscal years of *employment shall be utilized to compare the initial*

10

*fiscal year* in the five (5) fiscal year period.[10]

The 2013 version of the statute instructed substantively the very same thing, with only clarifying language added in 2017, some of which is emphasized above. The emphasized language shows that it is primarily the gross compensation in each subject fiscal year that must be compared to the immediately preceding fiscal year. KRS 61.598(5) is understood in relation to the above Subsection (2).

The General Assembly's directions were clear to begin with and have only become clearer over time with amendment to the same effect. The Retirement Systems properly interpreted and applied the statute in taking the last five-year-period preceding Duncan's retirement, considered the three with the highest compensation as a hazardous-duty employee, and then determined whether there were any discrete compensation increases between each of the applicable fiscal years. While it incorrectly identified a change in compensation as an increase per KRS 61.598, the Retirement Systems properly confined the identification of that change in total compensation as being between two of the applicable fiscal years. We determine this method was correct as a matter of law, that the statute's plain language does not direct the Retirement Systems to determine changes in compensation over a five-year period as JCSO argues.

---

[10] (emphasis added).

11

## *2. The burden of proving a bona fide promotion was properly placed on the employer.*

The Hearing Officer placed on JCSO the burden of proving the purported pay increase was the result of a bona fide promotion or career advancement. JCSO claims the burden of proof was misplaced, that the Hearing Officer should have assigned the burden of proof to the Retirement Systems to prove the negative inverse, that the increase it identified was not the result of a bona fide increase. Ultimately, the issue does not bear on the outcome of this case, because JCSO was correct that there was no compensation increase as a matter of law. But the JCSO would be wrong to think it would not have properly borne the burden of proof if the statute applied.

The burden of proof in administrative proceedings is governed under KRS 13B.090(7), which reads:

> [T]he party proposing the agency take action or grant a benefit has the burden to show the propriety of the agency action or entitlement to the benefit sought. The agency has the burden to show the propriety of a penalty imposed or the removal of a benefit previously granted.

Thus, if an administrative agency is imposing a penalty or revoking a benefit previously granted, the administration must carry the burden of proof. JCSO more or less argues the assessment is a penalty or that it is being deprived of a benefit, requiring the Retirement Systems to prove the lack of a bona fide promotion.

We disagree, first, because KRS 61.598 does not impose a penalty. Penalties are punitive in nature; they punish someone for engaging in behavior considered prohibited or unlawful. An assessment under KRS 61.598(3) is not

12

punitive because employers are not prohibited or bound by law not to increase employee compensation. They may do so at their discretion, and even up to a 10% increase, there is no effect at all on the employer. Only beyond that 10% are actuarial costs imposed on the employer, and it is not because the employer has done something unlawful or forbidden.

The assessment is also clearly not a revocation of a benefit granted. To find that would require us also to find participant-employers are somehow entitled to place the actuarial costs of their own pay increases, even absent a bona fide promotion, on other participants in the system. JCSO was not previously guaranteed or given the right to increase compensation beyond 10% without sustaining costs related to such increase. So even dubiously conceptualized as a "benefit," such was never granted by the Retirement Systems. The Retirement Systems was correct to place the burden on JCSO for purposes of the proceeding.

### 3. JCSO's constitutional objections are moot.

JCSO raises various constitutional bases for why the statute is either invalid or does not apply as it has been. But having resolved this case entirely on statutory grounds, we need not opine the constitutional ramifications of KRS 61.598, as we refrain from resolving moot issues in general and, where possible, from disturbing the validity of statutes on constitutional grounds. We resolve nearly identical constitutional claims under different circumstances in

13

*Kentucky Retirement Systems v. Jefferson County Sheriff's Office,*[11] rendered today.

## IV. CONCLUSION

For the reasons stated, we reverse the decision of the Court of Appeals, and remand the case to the trial court with instructions to vacate the Retirement Systems's assessment.

Minton, CJ., Hughes, Keller, Conley, VanMeter and Lambert, JJ., sitting. All concur. Nickell, J., not sitting.


COUNSEL FOR APPELLANT:

David Leighty
Priddy, Cutler, Naake & Meade, PLLC

COUNSEL FOR APPELLEE:

Leigh A. Jordan Davis

---

[11] 2019-SC-0476-T (Ky. June 17, 2021) (Part III.E).