RENDERED: FEBRUARY 24, 2023; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0318-MR

CHRIS JOHNSON                                                    APPELLANT

APPEAL FROM PIKE CIRCUIT COURT
v.        HONORABLE KIMBERLY C. CHILDERS, SPECIAL JUDGE
ACTION NO. 20-CI-00182

AKERS DEVELOPMENT, LLC;
CARROLL ENGINEERING, CO.;
COMMONWEALTH OF KENTUCKY-
DIVISION OF UNEMPLOYMENT
INSURANCE; COMMUNITY TRUST
BANK, INC.; HAROLD E. AKERS,
INDIVIDUALLY AND AS A
MEMBER OF AKERS
DEVELOPMENT AND HUBBLE
MINING; HUBBLE MINING CO.,
LLC; JIM D. AKERS, AKA JIMMY D.
AKERS, INDIVIDUALLY AND AS A
MEMBER OF AKERS
DEVELOPMENT AND HUBBLE
MINING; MARK BRANHAM;
RIVERSIDE SUPPLY, LLC; AND
UNITED STATES OF AMERICA
INTERNAL REVENUE SERVICE                                        APPELLEES

<u>OPINION</u>
<u>AFFIRMING</u>

** ** ** ** **

BEFORE:  CETRULO, DIXON, AND EASTON, JUDGES.

CETRULO, JUDGE:  This is an appeal from a Pike Circuit Court judgment that

confirmed a deed transfer to Appellee Akers Development, LLC ("Akers

Development")[1] after determining Akers Development sufficiently satisfied the

right of redemption statutory requirements.  After review, we affirm.

## I.  FACTS AND PROCEDURAL BACKGROUND

In February 2020, Appellee Community Trust Bank, Inc. ("CT

Bank"),[2] filed a foreclosure action against Akers Development for a property

located on Regina Belcher Highway in Pike County, Kentucky (the "property").

Thereafter, the Pike Circuit Court referred the matter to the master commissioner

for judicial sale.  The master commissioner obtained an appraisal for the property,

valuing it at $250,000.  Eight months later, after a public auction, the master

commissioner filed a report of sale to Appellant Chris Johnson ("Johnson") for

$55,000.  After the sale, a lien was retained on the property – pursuant to Kentucky

---

[1] Appellees Akers Development, LLC; Harold E. Akers, individually and as a member of Akers Development and Hubble Mining; Jim D. Akers, AKA Jimmy Akers, individually and as a member of Akers Development; and Hubble Mining will be referred to as "Akers Development," collectively.

[2] CT Bank was present at the circuit court hearing and approved the deed transfer to Akers Development but did not file a brief in this appeal.

Revised Statute ("KRS") 426.530 allowing Akers Development the right of redemption on the property within six months from the date of sale (expiring April 14, 2021) because the purchase price at auction was less than two-thirds of the property's appraised value. Soon after, the circuit court ordered the funds from the sale of the property to be distributed and a deed executed to Johnson.

In the months that followed, Akers Development and Johnson were in contact to discuss the future of the property. The parties discussed Akers Development possibly buying back the property but subsequently renting it to Johnson. Johnson later admitted that in "February or March" of 2021, Akers Development informed him of its intention to utilize its right of redemption to buy back the property.[3] On March 26, 2021, the negotiations "fell apart." Also on that day, Johnson called and informed the master commissioner that his only expense (beyond the purchase price) toward the property – as of that date – was $534 for flood insurance.[4]

---

[3] Johnson stated at the May 2021 hearing that the parties "talked about" Akers Development buying the property back in "February or March," but that nothing firm had been established. In its appellate brief, Akers Development argues that "[b]y January, Johnson had been told by the office of [Akers Development's] CPA that redemption was being considered."

[4] Johnson paid the flood insurance in November 2020, months before Akers Development filed the Notice of Redemption. Akers Development argued to the circuit court that it did not have to reimburse Johnson for this insurance payment because the flood insurance was "optional and not legally required" for the property. The circuit court gave Akers Development an opportunity to contest the expenditure, but ultimately, Akers Development paid the flood insurance – along with the other expenses – without objection.

On March 29, 2021, Akers Development obtained a cashier's check for the purchase price plus ten percent. That same day, Johnson paid the property taxes, but did not inform Akers Development of that payment at that time. The next day, Johnson paid property and casualty insurance, but again did not inform Akers Development of that payment at that time. On March 31, 2021 – 14 days *before* the right of redemption expired – Akers Development paid the full purchase price plus interest ($57,531.51) to the clerk and filed a notification of exercise of redemption right ("Notice of Redemption"). On April 9, 2021, CT Bank filed a motion for issuance of deed and distribution of funds, stating that Akers Development had exercised its right of redemption and should have a deed executed to it for the property. On April 21, 2021, Johnson filed an objection to CT Bank's motion and a motion to declare the right of redemption null and void because Akers Development did not pay the flood insurance, property taxes, or property and casualty insurance before the expiration of the right of redemption.

In May 2021, the parties presented oral arguments. At that hearing, Akers Development argued that Johnson did not inform it of his March 29 (property taxes) and March 30 (property and casualty insurance) expenditures until after the statutory deadline ended. Moreover, Akers Development argued that in the months preceding the deadline, it asked Johnson repeatedly if it owed additional funds, but Johnson did not answer nor show any proof of payments

(beyond a flood insurance payment of $534). As one element of its proof, Akers Development submitted a photograph of a cell phone showing a text it had allegedly sent on April 6, 2021 to Johnson stating, "Hey, Cris [sic], we did the redemption. Need to know if we owe you anything else, insurance? Let me know."

Johnson said he never received the text and later submitted phone records allegedly supporting his contention; however, the photograph Akers Development submitted showed the text was allegedly read on April 8, 2021. During his long narrative testimony at this hearing, Johnson admitted that his future plans for the property required him to own the property, not just rent it from Akers Development. He stated, "without the [property], I couldn't get a loan on such a big remodel of the building, with no asset to put up for collateral, so I really needed the building, and if they purchased it back I wouldn't have that."

On January 3, 2022, the circuit court entered an order finding Akers Development had "made timely inquiry as to what sums its exercise of its redemption rights had cause[d] it to owe [Johnson]" and overruled Johnson's motion to declare the right of redemption null and void ("January Order"). The January Order instructed Johnson to submit an itemized list of sums Akers Development owed him within five days and allowed Akers Development to pay and/or object to the itemized totals within ten days after Johnson's filing. Johnson

timely submitted receipts for flood insurance, property taxes, and property and casualty insurance. Akers Development did not object and timely paid the sum in full ($13,065.13) on January 12, 2022.

The next day, Johnson filed a motion to alter, amend or vacate the January Order pursuant to Kentucky Rule of Civil Procedure ("CR") 59.05, alleging Akers Development paid the reasonable costs owed to Johnson after the expiration of the statutory period for redemption. However, the court overruled his motion and ordered Johnson to surrender possession of the property ("March Order"). Johnson appealed.[5]

## II. STANDARD OF REVIEW

On appeal, Johnson challenges the circuit court's factual finding that Akers Development "made timely inquiry as to what sums its exercise of its redemption rights had cause[d] it to owe [Johnson.]" Our review must give due regard to the opportunity of the trial court to judge the credibility of the witnesses. CR 52.01. Additionally, any findings of fact by the trial court shall not be set aside unless clearly erroneous. *Id.* Clearly erroneous facts are those not supported by

---

[5] According to the notice of appeal, Johnson appeals both the January Order and the March Order. However, *denial* of a motion to alter, amend, or vacate pursuant to CR 59.05 is not appealable because it does not alter the judgment. *Ford v. Ford*, 578 S.W.3d 356, 366 (Ky. App. 2019). Therefore, this appeal is from the underlying judgment and our analysis addresses only the January Order.

substantial evidence. *Eagle Cliff Resort, LLC v. KHBBJB, LLC*, 295 S.W.3d 850, 853 (Ky. App. 2009) (citation omitted).

Additionally, Johnson argues that the circuit court erred in granting Akers Development's right of redemption because the full requirements of KRS 426.530 were not met within the statutory period. He argues that if Akers Development wanted to know firm numbers on his expenditures,[6] it should have motioned for the court to order him to release that information. The applicable standard of appellate review for issues of law, including statutory interpretation, is *de novo*. *Wheeler & Clevenger Oil Co., Inc. v. Washburn*, 127 S.W.3d 609, 612 (Ky. 2004).

### III.   ANALYSIS

Akers Development argues that Kentucky law favors the right of redemption; we agree. Dating back to 1899, the highest court of Kentucky upheld a good faith attempt to make such a redemption. *Moore v. Bishop*, 49 S.W. 957 (Ky. 1899). In *Moore*, a homeowner attempted to pursue his right to redeem but "by some mistake" was nine dollars short. *Id.* at 957-58. The Court determined that the debtor will be allowed to complete the redemption after the expiration of

---

[6] The parties agree that they had numerous conversations and text messages about taxes and fees for the property. Johnson argues Akers Development had knowledge of the general amount for those expenditures; Akers Development argues it was never given firm numbers or receipts despite repeated requests.

the time allowed, where he made a good faith attempt to redeem in time, but by mistake deposited a few dollars less than the amount due. *Id.*

More than 100 years later, Kentucky courts are still preserving the right of redemption. *See, e.g.*, *Eagle Cliff Resort*, 295 S.W.3d at 852 ("[A] right [of redemption] is 'protected' when the court assures compliance with Kentucky statutes and caselaw regarding judicial sales."). However, the right of redemption is not without limits. Looking at the plain language of the current statute, if a property is sold pursuant to an order of the court and does not bring two-thirds of its appraised value, the defendant has six months from the date of sale to buy back the property by paying 1) the auction purchase price, plus 2) ten percent interest, plus 3) "*any reasonable costs incurred by the purchaser after the sale for maintenance or repair of the property, including but not limited to utility expenses, insurance, . . . taxes . . . .*" KRS 426.530(1) (emphasis added).

### A. Findings of Fact: Clearly Erroneous Review

Here, the parties agree Akers Development paid the auction purchase price plus ten percent interest *within* the statutory period. All parties also agree that Akers Development *did not* pay the taxes and fees Johnson incurred within the statutory window. Johnson argues that Akers Development's failure to timely pay the taxes and fees extinguished their entire right of redemption; conversely, Akers

Development argues that they attempted to pay in good faith, but Johnson's actions prevented timely payment.

The circuit court determined that Akers Development made a good faith effort to request and pay those expenditures on time and the right of redemption was sufficiently exercised. We agree, and the record supports the circuit court's finding: 1) the parties agree they had been in negotiations for months and it was reasonable for Akers Development to request the fee and tax information directly from Johnson; 2) evidence (the text message) exists that Akers Development *did* request the information directly from Johnson; 3) the parties agree that Johnson did not proffer *proof* of those payments until the January Order instructed him to do so; 4) Johnson admitted that he paid the property taxes and bought the property and casualty insurance mere days before Akers Development filed his Notice of Redemption (and *after* Akers Development purchased the cashier's check for the redemption); 5) Johnson admitted in the May hearing that his business plan would fall through if Akers Development followed through with their redemption; and 6) Akers Development paid all the taxes and fees within 10 days of Johnson showing proof of his payments. The circuit court's factual findings were not clearly erroneous because they were supported by substantial evidence.

### B. Conclusions of Law: *De Novo* Review

Next, Johnson argues KRS 426.530 demands strict compliance. Akers Development, however, argues that under these circumstances, the statute does not require the reasonable expenses be paid within the statutory window. We agree.

**First**, Johnson cannot demand strict compliance with the right of redemption statutory timing when the delay in payment was of his own making. *See Hamilton Holdings LTD. v. Appalachian Royalty Tr., LLC*, No. 2019-CA-001556-MR, 2020 WL 2790417 (Ky. App. May 29, 2020).[7] Although unpublished, both parties cited *Hamilton Holdings* in their briefs; therefore, we find it valuable to address.

In *Hamilton Holdings*, a trust's property was sold – subsequent to a mortgage foreclosure action – but the purchase price at the public auction was less than two-thirds of the property's appraised value, thereby initiating a right of redemption. *Id.* at *1. The trust, through legal counsel, informed the auction purchaser of the trust's intent to redeem the property and requested that any reasonable costs be made known. *Id.* The parties could not reach an agreement on the reasonable costs incurred, and the circuit court held a hearing. *Id.* at *2. The

---

[7] We cite this *unpublished* opinion as persuasive, not binding, authority. *See* Kentucky Rule of Appellate Procedure 41(A).

circuit court settled the dispute, but the purchaser appealed the determination of ownership of coal mining royalties (accrued during right of redemption discussions).  *Id.*

Here, the parties interpreted *Hamilton Holdings* differently.  Johnson argues that – like the trust in *Hamilton Holdings* – to ascertain the "reasonable costs incurred," a redeemer should either a) request through legal counsel, b) file a motion with the court, and/or c) request a hearing.  While those are certainly reasonable (and recommended) steps, *Hamilton Holdings* did not create such a rule.  The parties in *Hamilton Holdings* handled *all* negotiations through legal counsel and the facts did not establish that the parties had personal contact at any stage of the process.  That is distinguishable from the situation before us.  Here, it was reasonable for Akers Development to request the information directly from Johnson considering the months of negotiations that had already occurred between the two parties.  Had those negotiations not happened, maybe more formal legal steps would have been necessary, but we address only the facts before us.

Akers Development argues that *Hamilton Holdings* placed the burden on the auction purchaser to make his or her reasonable costs known; but again, *Hamilton Holdings* did not create such a mandate.  Akers Development quoted the *circuit court's words* within the Facts section of the opinion, not this Court's holding in *Hamilton Holdings*.  This Court stated in *Hamilton Holdings* that an

-11-

auction purchaser cannot benefit from a delay of his own making in the redemption process. *Id.* at \*5 ("[W]e agree with the Bell Circuit Court that [the auction purchaser] may not use the delay it caused to unjustly lengthen its period of possessing the property and thereby not promptly allowing [the original owner] to complete the redemption process and thereafter claim entitlement to the coal mining royalties." Similarly, here, Johnson may not demand strict compliance to right of redemption timing when *his own actions prevented* strict compliance by the redeemer.

That leads us to our **second** conclusion: Akers Development's substantial compliance was sufficient to satisfy the requirements of the "reasonable costs incurred by the purchaser" provision of KRS 426.530. In *Knox County. v. Hammons*, 129 S.W.3d 839 (Ky. 2004), the Kentucky Supreme Court discussed when substantial compliance (versus strict compliance) was sufficient to satisfy a statutory provision. The Court's determination focused on whether the provision in question was mandatory or directory. *Id.* at 842.

> In considering whether the provision is mandatory or directory, we depend not on form, but on the legislative intent, which is to be ascertained by interpretation from consideration of the entire act, its nature and object, and the consequence of construction one way or the other. In other words, if the directions given by the statute to accomplish a given end are violated, but the given end is in fact accomplished, without affecting the real merits of the case, then the statute is to be regarded as directory merely.

*Id.* at 843 (internal quotation marks and citations omitted).

There, the Court concluded that the provision was directory, and strict interpretation was not absolutely necessary to accomplish the intent of the statute. The facts before us are distinct from *Knox County*,[8] but the guidance is undeniable.

Here, in April 2014, the legislature added the "reasonable costs" language to the right of redemption statute. From the plain meaning of the statute, we can infer that the intent of the legislature was to make an auction purchaser whole for his expenses if he lost the property through the right of redemption. Here, even though the "reasonable costs" deadline was not met, the real merits of the case were in fact still accomplished, *i.e.*, the purchase price, plus interest, were paid within the strict six-month window, and the reasonable costs were paid shortly after the right of redemption was utilized. Stated another way, strict interpretation of the "reasonable costs" provision is not absolutely necessary to accomplish the intent of the statute. Therefore, the "reasonable costs" provision is directory, requiring substantial (not strict) compliance.

Here, Akers Development substantially complied with the "reasonable costs" provision of KRS 426.530. Akers Development tried to make Johnson

---

[8] *Knox County* dealt with, in relevant part, KRS 67.077(2) and whether "shall" in a tax ordinance created a mandate or if substantial compliance was acceptable.

-13-

whole before filing its Notice of Redemption, but Johnson did not turn over his expense receipts as requested; Akers Development *did* make Johnson whole within ten days of his submission of those expenses to the court. Under these circumstances, Akers Development substantially complied with the reasonable costs provision of KRS 426.530.

## IV. CONCLUSION

We detect no error in the court's finding that Akers Development made timely attempts to pay the reasonable costs Johnson incurred. Further, here, the "reasonable costs incurred by the purchaser" provision of KRS 426.530 is directory, and Akers Development's substantial compliance with this provision was sufficient. Lastly, even if strict compliance would have been required, Johnson's actions waived strict compliance.

For the foregoing reasons, the judgment of the Pike Circuit Court is AFFIRMED.

ALL CONCUR.


BRIEFS FOR APPELLANT:

James L. Hamilton
Pikeville, Kentucky

BRIEF FOR APPELLEE AKERS DEVELOPMENT, LLC:

Lawrence R. Webster
Pikeville, Kentucky

-14-